**Dennis F. FLYNN, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–110.

United States Court of Veterans Appeals.

June 3, 1994.

George T. Estry (non-attorney representative) was on the brief for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, Washington, DC, were on the brief for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge filed the opinion of the Court in which HOLDAWAY, Judge, joined.

FARLEY, Judge, filed a dissenting opinion.

IVERS, Judge:

Dennis F. Flynn appeals a November 19, 1992, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for hypertension as secondary to service-connected diabetes mellitus. *Dennis F. Flynn*, BVA 9227091 (Nov. 19, 1992). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set

forth below, the Court affirms the November 1992 decision of the BVA.

## I. FACTUAL BACKGROUND

Appellant served on active duty in the United States Navy from June 10, 1969, to March 6, 1973. R. at 13. On September 9, 1975, a VA regional office (RO) granted service connection for diabetes mellitus (rated 20% disabling). *See* R. at 57.

On April 30, 1990, appellant sought service connection for hypertension secondary to diabetes mellitus. *See* R. at 56. On October 19, 1990, the RO denied secondary service connection for hypertension. R. at 57. On March 28, 1991, the Board also denied service connection. *See* R. at 74. On April 16, 1991, appellant moved for reconsideration by the Board Chairman of the Board's denial. Appellant's Br., App. A at A2–A4. On July 11, 1991, the Board Chairman denied the motion for reconsideration. *Id.* at A6. Appellant subsequently appealed the BVA decision to the Court. *Flynn v. Derwinski*, U.S.Vet.App. No. 91–1245 (appeal filed July 24, 1991). On April 24, 1992, the Secretary filed an unopposed motion to remand the case to the Board (R. at 74–78), which the Court granted on May 15, 1992 (R. at 79). On November 19, 1992, following readjudication by the Board subsequent to the Court's remand order, the Board issued a decision denying secondary service connection for hypertension. *Flynn*, BVA 92–27091, at 6. The Board's November 1992 decision is now on appeal to the Court.

## II. ANALYSIS

### A. *Plausible Basis*

■ Appellant's claim for secondary service connection is an original claim, and the Court reviews the Board's findings of fact regarding original claims under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Harder v. Brown*, 5 Vet.App. 183, 187 (1993); *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual

determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53.

■ Under 38 C.F.R. § 3.310(a) (1993), secondary service connection is available for a disability

which is proximately due to or the result of a service-connected disease or injury.... When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition.

*See Harder*, 5 Vet.App. at 187; *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990). Therefore, appellant's hypertension could qualify for service connection if it were "proximately due to or the result of" his service-connected diabetes.

In this case, appellant underwent a VA examination on July 11, 1990. In the resulting examination report, a VA physician, Dr. Bernard Goldstein, diagnosed appellant with diabetes mellitus and hypertension which did "not appear to be well controlled at the present time on medication." R. at 52. In that report, Dr. Goldstein also wrote:

Discussed this case with Dr. N. Wongsurawat, endocrinologist. It was his feeling that if there were no kidney manifestations shown by the laboratory tests and the KUB that it was unlikely that the diabetes was the cause of the hypertension. He felt that it was more likely an essential hypertension.

*Ibid.* (A "KUB" is a kidney-ureter-bladder X-ray and is synonymous with an abdominal X-ray. Mark A. Moskowitz & Michael E. Osband, The Complete Book of Medical Tests 105–06 (W.W. Norton & Company 1984).) The VA examination findings provide a plausible basis for the Board's denial of secondary service connection.

### B. *Independent Medical Evidence*

■ Appellant argues that Dr. Goldstein's opinion could not form the basis for a denial by the Board. Appellant's Br. at 9. He argues that the Board substituted its own unsubstantiated medical conclusions for that of the medical evidence of record. *Id.* at 10. In *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991), however, the Court stated:

BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or [quoting] recognized medical treatises in its decisions that clearly support its ultimate conclusions....

... [H]aving reached a contrary conclusion, it was necessary for the panel to state its reasons for doing so and, more importantly, point to a medical basis other than *the panel's own* unsubstantiated opinion which supported the decision.

(Emphasis added.) Here, the Board panel did not rely on its own unsubstantiated conclusions. To the contrary, it relied on a VA medical examination, which reported a diagnosis of hypertension but which also indicated that, in consultation with a specialist, appellant's hypertension was not related to his service-connected diabetes.

Appellant also argues that the medical evidence relied upon by the Board is inadequate because the endocrinologist, Dr. Wongsurawat, did not examine appellant or his medical records. Appellant, however, has presented no persuasive reason to believe that Dr. Wongsurawat had an insufficient basis upon which to form an opinion.

In his dissent, our colleague states that the parenthetical statement from Dr. Wongsurawat is ambiguous and that the record on appeal is inadequate for judicial review. *Post* at 506–07. Appellant's own arguments regarding the consultation, however, revolve around the procedural failure of not having had the endocrinologist examine appellant and his records and of relying on "hearsay" statements, as well as the substantive failure of not having applied medical treatises stating that hypertension is a necessary consequence of diabetes mellitus. R. at 80–81; Br. 9–11. Appellant does not argue that Dr. Wongsurawat's statement does not mean what it says. Nevertheless, even if ambiguity were at issue, the phrasing of the July 1990 VA examination report dispels any notion of ambiguity. The report is facially

clear and, as discussed above, provides a plausible basis for the BVA's denial of service connection.

## C. Hearsay Evidence

■ Appellant also argues that the BVA decision rested on hearsay because Dr. Wongsurawat verbally presented his opinion to Dr. Goldstein, who subsequently memorialized that opinion in the July 1990 examination report. The rules of hearsay evidence, however, are not applicable to the BVA decision-making process.

■ In *Manio v. Derwinski*, 1 Vet.App. 140 (1991), the Court approvingly quoted a legislative report prepared in connection with the Veterans' Judicial Review Act (VJRA), Pub.L. No. 100–687:

> The legislative history of the [VJRA] indicates that VA is to adjudicate claims in a manner sympathetic to veterans.
>
> Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits. This is particularly true of service-connected disability compensation where the element of cause and effect has been totally by-passed in favor of a simple temporal relationship between the incurrence of the disability and the period of active duty.
>
> I[m]plicit in such a beneficial system has been an evolution of a completely exparte system of adjudication in which Congress expects VA to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits. Even then, VA is expected to resolve all issues by giving the claimant the benefit of any reasonable doubt. *In such a beneficial structure there is no room for such adversarial concepts as cross examination, best evidence rule, hearsay evidence exclusion, or strict adherence to burden of proof.*

H.R.REP. No. 963, 100th Cong., 2d Sess. 13, *reprinted in* 1988 [U.S.C.C.A.N.] 5782, 5795 (emphasis added).

*Manio*, 1 Vet.App. at 144. The VA claims adjudication process is paternalistic and non-adversarial. *Nagler v. Derwinski*, 1 Vet. App. 297, 301 (1991). As the passage from

*Manio* indicates, in keeping with this setting, evidence offered in opposition to—and in support of—a claim for VA benefits is not subject to formal evidentiary principles such as the hearsay rule. *See generally* FED. R.EVID., Article VII; *see also* 38 C.F.R. § 3.303(a) (1993) (regarding service connection, VA must consider "the basis of the places, types and circumstances of [the veteran's] service as shown by service records, the official history of each organization in which he served, his medical records and *all pertinent medical and lay evidence*.") (emphasis added).

The Board's own Rules of Practice provide for a nonadversarial setting during the hearing process: "Proceedings will not be limited by legal rules of evidence, but reasonable bounds of relevancy and materiality will be maintained." 38 C.F.R. § 20.700(c) (1993).

The practice of not adhering strictly to the Federal Rules of Evidence has its counterparts in other administrative agency settings as well. *See* 5 U.S.C. § 556(d) (Administrative Procedure Act (APA) excludes only "irrelevant, immaterial, or unduly repetitious evidence."); *Richardson v. Perales,* 402 U.S. 389, 400, 402, 91 S.Ct. 1420, 1426, 1427, 28 L.Ed.2d 842 (1971) (Social Security disability hearings are not subject to strict rules of evidence; physician's report admissible in Social Security disability hearing); *Keller v. Sullivan,* 928 F.2d 227, 230 (7th Cir.1991) (hearsay statements are admissible if relevant and material in Social Security disability hearings); *Myers v. Secretary of Health and Human Services,* 893 F.2d 840, 846 (6th Cir. 1990) (hearsay testimony was admissible in administrative proceeding to exclude medical suppliers from Medicare payment program); *Calderon–Ontiveros v. I.N.S.,* 809 F.2d 1050, 1053 (5th Cir.1986) (hearsay INS apprehension report was admissible in Board of Immigration Appeals deportation hearing under APA, 5 U.S.C. § 556(d)); *Evosevich v. Consolidation Coal Co,* 789 F.2d 1021, 1025 (3d Cir.1986) (hearsay reports of non-testifying physicians are "freely admissible" in black lung disability case before Labor Department's Benefits Review Board); *see also Hoska v. United States Dep't of the Army,* 677 F.2d 131, 139 (D.C.Cir.1982) (in Merit Systems Protection Board hearing, "[p]rovid-

ed it is relevant and material, hearsay is admissible in administrative proceedings generally and in adverse actions in particular.")

Although the instant appeal involves evidence developed during the VA decision-making process in general and not testimony presented at a BVA hearing, appellant points to no case law for the proposition that Dr. Wongsurawat's statement should be ruled inadmissible on hearsay grounds for BVA purposes. We decline appellant's invitation to graft a hearsay rule on the VA claims adjudication process.

### D. *Effect of VA Circular*

■ Appellant also argues that the Board erred by failing to apply a Veterans Benefits Administration (VBA) Circular, VBA CIRCULAR 21–91–1, RECENTLY DISCOVERED ARMY RECORDS (Jan. 14, 1991) [hereinafter "VBA CIRCULAR"]. This case does not involve a precedent opinion of the VA's General Counsel (GC). 38 U.S.C. § 7104(c); 38 C.F.R. §§ 2.6(e)(9) (VA GC is authorized to designate which legal opinions are precedential for VA benefits purposes), 14.507 (VA GC's written legal opinions are conclusive as to all VA officials and employees), 19.5 (VA GC's precedent opinions are binding on BVA) (1993); *Brooks v. Brown,* 5 Vet.App. 484, 486 (1993).

Rather, this case involves an illustrative example set forth in a VBA circular regarding the processing of claims on the basis of newly discovered service medical records. With regard to VA circulars and handbooks, the Court of Appeals for the Ninth Circuit has stated " 'that not all agency policy pronouncements which find their way to the public can be considered regulations enforceable in federal court.' " *Rank v. Nimmo,* 677 F.2d 692, 698 (9th Cir.1982) (quoting *Chasse v. Chasen,* 595 F.2d 59, 62 (1st Cir.1979)). The Ninth Circuit further stated:

In order for the Lenders Handbook and the VA circulars to have the "force and effect of law," they must (1) prescribe substantive rules—*not* interpretive rules, general statements of policy or rules of agency organization, procedure or practice—and, (2) conform to certain procedural requirements. *Chrysler Corp. v. Brown,* 441 U.S.

281, 301[, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208] ... (1979).

*Rank,* 677 F.2d at 698; *see also Buzinski v. Brown,* 6 Vet.App. 360, 368–69 (1994); *cf. Suttmann v. Brown,* 5 Vet.App. 127, 138 (1993) ("[T]he Board must ensure compliance with VA's rules for adjudication of POW claims."); *Fugere v. Derwinski,* 1 Vet.App. 103, 107 (1990) (provision in VA adjudication manual was subject to APA's requirement of publication in Federal Register and opportunity for comments where provision "was more than a mere procedural guideline; it affected a substantive right...."). *But see* 38 C.F.R. § 19.5 ("The Board is not bound by Department manuals, circulars, or similar administrative issues.")

In this case, the pertinent VBA CIRCULAR discussed the discovery of certain service medical records which had theretofore been presumed completely destroyed because of a fire at the National Personnel Records Center in St. Louis, Missouri. The VBA CIRCULAR also discussed how the discovery of these records would affect rating decisions. In particular, the VBA CIRCULAR described several factual scenarios as illustrative examples. One of these examples involved a claim for diabetes:

> On June 10, 1974, a veteran filed a claim for service connection for diabetes. Service medical records were negative and earliest evidence of a diagnosis was 6 years after discharge. The claim was denied. On May 7, 1986, the veteran claimed service connection for a recently diagnosed hypertensive heart disease. Service medical records were negative and the claim was denied. Recently received 1945 extracts showed hospitalization for diabetes mellitus in 1945. Service connection will be established for diabetes mellitus effective June 10, 1974. *Service connection will be established for hypertensive heart disease effective May 7, 1986, as sound medical principles dictate a causal relationship to diabetes.* The discussion paragraph of the rating will cite the reasons for the assignment of different effective dates.

*Id.* at 5 (emphasis added).

The Board was not bound to apply the italicized portion of the above passage and to grant secondary service connection in the case at bar. First, appellant's reading of the passage is out of context. The VBA CIRCULAR concerned the recent discovery of certain service medical records, not a presumption that service connection should always be granted for hypertension as secondary to service-connected diabetes. Second, the VBA CIRCULAR, when viewed in its entirety, is a *procedural* guide for consideration of claims on the basis of newly discovered service medical records.

### E. Evidence in Support of Appellant's Claim

Appellant directs the Court to a February 1991 letter by Dr. Turner Camp, a medical consultant to the Veterans of Foreign Wars (VFW), appellant's service representative in the case. In that letter, Dr. Camp stated that diabetes "is universally accepted as a cause of cardiovascular disease [ (CVD) ] and hypertension is often the first sign of CVD." R. at 71. The VFW consultant also quoted a medical treatise for that proposition. *Ibid.* He concluded: "In view of the foregoing, it is the opinion of the undersigned that service connection for [CVD] should be granted as secondary to the service[-]connected diabetes." *Ibid.*

■ In its November 1992 decision, the Board rejected Dr. Camp's conclusion: "While [Dr. Camp's letter] identifies medical authority for the proposition that [CVD] is related to diabetes mellitus, no objective evidence has been submitted which establishes a medical relationship *in this particular case* between the veteran's service-connected diabetes mellitus and hypertension." *Flynn,* BVA 92–27091, at 5. Discussing the medical treatise quoted by Dr. Camp, the Board stated that the *same* treatise listed "several components of [CVD], namely: congenital heart disease, rheumatic heart disease, coronary heart disease, and cerebrovascular disease ... but not hypertension, *per se.* High blood pressure is mentioned as a risk factor in [CVD] apart from diabetes." *Ibid.* (citing William T. Friedewald, *Epidemiology of Cardiovascular Disease,* in CECIL TEXTBOOK OF MEDICINE 179, 182 (James B. Wyngaarden et al. eds., 18th ed. 1988)). Thus, the Board articulated its reasons or bases for rejecting

this medical opinion, and that articulation was not clearly erroneous. *See also Guerrieri v. Brown,* 4 Vet.App. 467, 471 (1993) (BVA must articulate reasons or bases for rejecting medical opinion of treating physician). In addition, since the Board used the same treatise that appellant had submitted in support of his claim, this case does not present the due process concerns (notice and opportunity to be heard) discussed by this Court in *Thurber v. Brown,* 5 Vet.App. 119 (1993).

### F. *Use of Medical Treatise*

■ In its November 1992 decision, the Board also cited a medical treatise for the proposition that "[h]ypertension, standing alone and not the result of diabetes-induced renal disease, *i.e.,* essential hypertension, is not found among the complications of diabetes mellitus...." *Flynn,* BVA 92–27091, at 5 (citing Jerrold M. Olefsky, *Diabetes Mellitus,* in CECIL TEXTBOOK OF MEDICINE 1307–10) (James B. Wyngaarden et al. eds., 19th ed. 1992). The Board's use of a medical treatise does not violate the requirement that a claimant be given notice of the BVA's use of a medical treatise and an opportunity to respond to that treatise. *See Thurber,* 5 Vet. App. at 129. In a recent case, the Court held that "[t]he failure of the BVA to provide appellant with notice and an opportunity to respond to the medical treatises superfluously cited in its decision constitutes harmless error." *Yabut v. Brown,* 6 Vet.App. 79, 85 (1993). In *Yabut,* there was a plausible basis in the record for the BVA's decision even though the BVA had not explicitly relied upon that basis for its decision. *Ibid.* In this case, there is a plausible basis in the record for the Board's decision, and the Board expressly relied on that evidence for its decision. The citation was therefore, superfluous, and we will affirm the Board's denial of secondary service connection for hypertension.

### III. CONCLUSION

Accordingly, upon consideration of the record, appellant's brief, and the Secretary's brief, we AFFIRM the November 1992 decision of the BVA.

FARLEY, Judge, dissenting:

Although I agree with much of the majority opinion, particularly Part II. C. concerning hearsay evidence, I am compelled to dissent from Parts II. A. and B. and the majority's disposition. I would remand this matter for further proceedings.

In Part II. A., the majority holds that "[t]he VA examination findings provide a plausible basis for the Board's denial of secondary service connection." *Ante* at 502. In Part II. B., the majority faults appellant for having "presented no persuasive reason to believe that Dr. Wongsurawat had an insufficient basis upon which to form an opinion." *Id.* In both instances, the "basis" to which the majority is referring is Dr. Goldstein's parenthetical hearsay report that "[i]t was [Dr. Wongsurawat's] feeling that if there were no kidney manifestations shown by the laboratory tests and the KUB that it was unlikely that the diabetes was the cause of the hypertension." R. at 52. I simply do not know what that sentence means. (I should also note that I am not as confident as the majority that a "KUB" is a type of x-ray and the record certainly does not further my understanding.)

One possible interpretation is that "laboratory tests and the KUB" should be performed and, if they are negative for kidney manifestations, it would be unlikely that the hypertension resulted from the diabetes. If indeed that is what Dr. Wongsurawat intended, there is no indication that such tests (assuming that a "KUB" is a test) were ever performed and I would remand because of a violation of the statutory duty to assist under 38 U.S.C. § 5107(a). On the other hand, Dr. Wongsurawat's "feeling" might have been based on the results of tests which were performed and then reviewed by or reported to him; however, no such test results appear in the record on appeal. In that event, I would find it difficult to conclude that there was a "plausible basis in the record" for either his conclusion or that of the BVA. Nor could I deem the BVA's statement of reasons or bases required by 38 U.S.C. § 7104(d)(1) to be adequate.

Based upon the state of the record before me, I could only reach a determination in this matter by engaging in speculation as to what Dr. Goldstein actually meant, and I have no reason to conclude that the BVA was doing anything else when it denied secondary service connection for hypertension. Because I find that this record is neither " 'clear enough to permit effective judicial review,' nor in compliance with statutory requirements," I would remand for further adjudication. *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990) (quoting *International Longshoremen's Ass'n v. National Mediation Bd.,* 870 F.2d 733, 735 (D.C.Cir.1989)).