**Patrick F. BLACK, Jr., Appellant,**

v.

**Jesse BROWN, Secretary Of Veterans Affairs, Appellee.**

**No. 95–47.**

United States Court of Veterans Appeals.

June 4, 1997.

Order Denying En Banc Review
June 17, 1997.

Patrick F. Black, Jr., pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Korber, Deputy Assistant General Counsel; and Theresa M. Catino, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and IVERS, Judges.

IVERS, Judge, filed the opinion of the Court. KRAMER, Judge, filed a dissenting opinion.

IVERS, Judge:

The appellant, a World War II veteran, appeals an August 18, 1995, decision of the Board of Veterans' Appeals (BVA or Board) which denied his claim for service connection for heart disease as not well grounded. The Secretary filed a brief. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the reasons stated below, the Court will affirm the BVA decision.

## I. FACTS

The appellant served on active duty from September 1943 to January 1946. Record (R.) at 15.

The appellant's induction examination reported very mild neurocirculatory asthenia as a defect. R. at 19. Neurocirculatory asthenia is a syndrome characterized by palpitations, dyspnea, a sense of fatigue, fear of effort, and discomfort brought on by exercise or even slight effort. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 150 (28th ed.1994) [hereinafter DORLAND'S]. Service medical records (SMRs) show treatment for shrapnel wounds to both arms, the chest wall, and the right thigh; moderate bilateral trench foot; severe hyperhidrosis caused by anxiety; and metallic shell fragments in the left arm, right arm, and chest wall. R. at 36. Hyperhidrosis is excessive perspiration. DORLAND'S at 794. The appellant's separation examination listed residuals of shrapnel wounds to both arms, the right thigh, and the chest. In addition, trench foot and a deviated septum were noted. R. at 58–59. Trench foot is a condition resembling frostbite. DORLAND'S at 648.

In January 1946 the appellant filed a claim for service connection for shrapnel wounds and trench foot. R. at 78–79. In an April 1946 VA orthopedic examination the appellant complained of pain in his left arm. The impression at that time was a symptomatic left upper arm scar with keloid formation and tenderness, asymptomatic scars on the right arm and right thigh, a non-tender scar on the right sternal clavicular joint of the anterior chest with keloid formation, and residuals from trench foot. R. at 73.

In a May 1946 rating decision the regional office (RO) granted service connection for a symptomatic, moderately severe, left upper arm scar with keloid formation and tenderness, rated 20% disabling, residuals of bilateral trench foot, rated 10% disabling, and asymptomatic scars on the right arm and thigh, and a non-tender scar on the anterior chest, right sternal clavicular joint, keloid formation, rated 0% disabling. The combined disability rating was 30%. R. at 76.

A June 1948 VA orthopedic examination listed diagnoses of symptomatic scars of both arms, the anterior chest, and the right thigh, as well as residuals of symptomatic bilateral trench foot. R. at 81. A June 1962 VA examination reflected diagnoses of multiple scars (symptomatic left arm scar) and bilateral symptomatic residuals of trench foot. R. at 87. Examination of the cardiovascular system revealed, "Reg[ular] apex not palpated. No murmur heard." R. at 85.

In March 1982 the appellant complained of trouble with his feet and left arm. He stated, "I have had this problem for years but it has gotten worse, the last two years." R. at 90. The appellant underwent a VA surgical examination in March 1982. The impression at that time was status post shrapnel wounds of the left arm, right arm, chest, and right thigh with residual symptoms of pain and paresthesia on the left arm and forearm, and some weakness of the left arm. In addition, examination of the appellant's bilateral trench foot found trophic changes of the skin and nails, pain in both feet, and anesthesia of the toes. R. at 96. Paresthesia is an abnormal touch sensation, such as burning, prickling, or formication, often in the absence of an external stimulus. DORLAND'S at 1234. Trophic pertains to nutrition. Id. at 1749. Anesthesia is also known as numbness. Id. at 74. X-rays found three metallic foreign bodies in the left upper arm. R. at 94. An addendum to the examination revealed that the retained fragments of shrapnel in his left arm produced the neurological findings he

complained of, and the examiner stated, "This condition will not improve with anymore elapse [sic] of time." R. at 106.

In an April 1982 rating decision the appellant was granted an increased rating for residuals of bilateral trench foot, rated 30%. The 20% disability rating for the left arm scar and noncompensable ratings for scars of the right arm, right thigh, and anterior chest were continued. The combined disability rating was 40%. R. at 100–01.

A June 1982 VA neurological examination noted,

> The patient's symptoms appear to reflect a traumatic median neuropathy. This most likely reflects the injuries he sustained in 1944. Because of the time elapsed, however, it is possible that something dependent may be happening such as the presence of carpal tunnel syndrome ... I feel the patient's symptoms could represent a limited degree of disability from a neurological point of view in terms of his job at the post office.

R. at 116. Median neuropathy is a functional disturbance or pathological change in the median nerve. DORLAND'S at 1132.

A July 1982 VA orthopedic examination reflects a diagnosis of residuals of a shell fragment injury to the left arm with evidence of resultant nerve damage. R. at 113–14. In an August 1982 rating decision the appellant was denied an increased rating for his service-connected trench foot and scars. The appellant was granted service connection for traumatic median neuropathy rated 10% disabling as a "[d]isability directly due to and proximately the result of service-connected [left arm scar]." R. at 122–23.

An April 1988 VA orthopedic examination found shrapnel wounds of the left arm, anterior chest, right arm, and right thigh manifested by recurrent pain in the left thumb and forearms as well as cramping of the thumb and little finger. Also noted was status post bilateral trench foot manifested by extreme coldness, sweating and pallor, and some exfoliation. R. at 129–30.

An April 1988 private medical record noted that the appellant's heart rate was regular, no murmur or bruit was present, and his blood pressure was 125/80. R. at 131. The diagnoses were: (1) status post multiple shrapnel injuries; (2) post traumatic median neuropathy, left hand and wrist, associated with mild thenar atrophy, mild weakness of the abductor of the left thumb and median nerve sensory loss; and (3) post-traumatic causalgia, left upper extremity. R. at 132. Thenar pertains to the palm. DORLAND'S at 1696. The median nerve controls most of the flexor muscles of the front of forearm, most of the short muscles of the thumb, and elbow joint and many joints of the hand. Id. at 1123. Causalgia is a burning pain often accompanied by trophic skin changes, due to injury of the peripheral nerve, particularly the median nerve. Id. at 280. A June 1988 rating decision continued the previous disability ratings. R. at 134.

In January 1992 the appellant suffered a heart attack and was hospitalized at Miriam Hospital. The appellant indicated, "I would like you to evaluate my heart attack as possibly being caused by my service-connected disabilities including poor circulation and paralysis of median nerve." R. at 136. Attached to the statement were medical records from his January 1992 Miriam Hospital stay which reflected that the appellant had smoked one and a half packs of cigarettes a day for fifty years. R. at 137–38. The appellant was diagnosed with acute inferior myocardial infarction with possible lateral and posterior extension. Physical examination found no murmurs and his blood pressure was 132/71. R. at 138. An acute inferior myocardial infarction is an infarction localized in the region between the lateral border of the posterior papillary muscle and the posterior septum. DORLAND'S at 837. X-rays revealed multiple metallic foreign bodies scattered throughout the chest and no evidence of acute cardiopulmonary disease. R. at 145.

In a March 1992 rating decision, the RO denied service connection for arteriosclerotic heart disease secondary to service-connected disabilities, including a shrapnel wound to the chest. R. at 153–54. In May 1992 the appellant submitted a Notice of Disagreement (NOD) and contended that "a relationship exists between his service connected

disabilities and recent heart attack." R. at 180. The appellant also contended that the wounds he sustained caused a chronic anxiety state which further contributed to his heart attack. R. at 181. Attached to his NOD were documents already of record. R. at 182–85. A Statement of the Case (SOC) was issued. R. at 188–92.

The appellant submitted VA Form 1–9, Appeal to Board of Veterans' Appeals (Form 1–9), for the issue of service connection for arteriosclerotic heart disease secondary to shell fragment wounds of the chest. The appellant contended that his heart problem was coronary artery disease, not arteriosclerotic heart disease. He asserted that he had retained foreign body shell fragments in his chest and that the symptoms of his heart disease were masked by the similar symptoms of the median neuropathy in his left arm. R. at 194. The appellant also contended that his records should be reviewed for a diagnosis of chronic anxiety state. R. at 195.

In November 1992 the appellant and his wife testified at a hearing. The appellant stated that he was treated in January 1992 at Miriam Hospital for blood clots in his left arm and was given medication to dissolve them. R. at 204. The appellant asserted that he did not know that a chronic anxiety condition had not been rated by VA. R. at 205. He claimed that his anxiety was a result of his combat duty. R. at 206. He reported that he had constant pain in his left arm and indicated that muscle had been removed in order to remove shrapnel from his arm. He maintained that the blood clots in his arm were a result of the shrapnel left in his arm. R. at 209. The appellant's wife testified that she was a registered nurse and that, during his hospitalization, the appellant was given streptokinase to dissolve his blood clots. She indicated that she believed that the foreign bodies retained by the appellant masked the symptoms of his heart attack. R. at 215–16. She reported that they had been told "in passing" that the retained fragments in his chest were the cause of his heart problem. R. at 216. In his reply brief, the appellant states that his wife is a registered nurse skilled in utilization review and Omnibus Budget Reconciliation Act compli-

ance regulations. Appellant's Reply Brief (Br.) at 7. The appellant stated that he would try to get further evidence to show that the blood clots were the result of the retained shrapnel and that the blood clots led to the heart attack. R. at 217. He testified that he was being treated for hypertension, but was not given any medication as the doctor felt that it "wasn't too bad" and could be treated by diet. R. at 218–19. The hearing officer gave the appellant 60 days to obtain any additional evidence in support of his claim. R. at 221.

In December 1992 the appellant indicated that he wanted to amend his claim to include claims for total disability based upon individual unemployability (TDIU) since January 1992 and service connection for combat anxiety, a deviated septum, and a cervical injury. In addition, he wanted to reopen his claims for an increased rating for his left upper arm and radial neuropathy disabilities. He also contended that it was clear and unmistakable error (CUE) not to have granted a compensable rating for shrapnel fragment wounds for the interior chest. R. at 197. However, no additional evidence was submitted in support of his claims for TDIU, service connection for combat anxiety, a deviated septum, and a cervical injury, and an increased rating for his left upper arm and radial neuropathy disabilities.

In January 1993 the hearing officer denied the appellant's claim for service connection for arteriosclerotic heart disease as directly due to a shrapnel wound of the chest. R. at 229–31. A March 1993 VA examination reflects impressions of status post shrapnel wounds to the arms, right thigh, and chest manifested by complaints of pain and weakness in the left arm and hand and retained shrapnel fragments in the left arm, upper sternal area, and at the left diaphragm by x-ray. R. at 234. The appellant's scars were found to be well healed with deformity of the left arm scar involving the brachial muscle. R. at 236. The appellant was also found to have a left median nerve palsy and residuals of frozen feet. R. at 242. A x-ray report noted that the heart and lungs were normal except for metallic foreign bodies in the soft

tissues in the region of the left diaphragm. R. at 246.

A June 1993 VA examination found that the metallic shrapnel fragments in the deep muscle tissue did not interfere with the function of the chest muscles. R. at 244. In a June 1993 rating decision the appellant's service-connected disabilities were rated as follows: bilateral trench foot, 30%; left upper arm scar with keloid formation and tenderness, 20%; shell fragment wounds of the chest, 10%; left arm traumatic median neuropathy, 10%; bilateral deviated nasal septum, 0%; right arm scar, 0%; right thigh scar, 0%; and anterior neck scar, 0%. Supplemental (Suppl.) R. at 7. Service connection was denied for a heart problem, and for chronic anxiety disorder. TDIU was also denied. Suppl. R. at 8. Regarding the chronic anxiety disorder the RO stated, "Although anxiety was described in service the veteran was only treated once and there is not evidence of treatment between service and the present time." Suppl. R. at 7.

In October 1993 the appellant submitted a statement from Linda C. Coffin, M.D., which revealed that she had treated the appellant since 1987 and that he had suffered a large inferior wall myocardial infarction complicated by ventricular tachycardia and cardiac arrest. She stated that the appellant continued to be treated for his blood pressure, coronary artery disease, and cholesterol. R. at 259. Ventricular tachycardia is an abnormally rapid ventricular rhythm with aberrant ventricular excitation, usually in excess of 150 per minute. DORLAND'S at 1655. Also submitted was a statement from the appellant and duplicate records. R. at 255–84. In November 1993 the appellant submitted an NOD for his claim filed in November 1992 (the claim was received by VA in December 1992) and contended that he was addicted to cigarettes as a result of the Army selling them for fifty cents a carton and that this led to his heart condition. R. at 286–88.

On August 18, 1995, the BVA rendered the decision currently on appeal. The Board found that all relevant evidence necessary for an equitable disposition of the appellant's appeal had been obtained by the RO and that the appellant had not submitted competent evidence in support of his claim. The BVA concluded that the appellant had not submitted evidence of a well-grounded claim. R. at 6.

## II. ANALYSIS

 "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a); *Anderson v. Brown*, 9 Vet.App. 542, 545 (1996). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). In *Tirpak v. Derwinski*, 2 Vet.App. 609, 610 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." For a claim to be well grounded, there must be (1) a medical diagnosis of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Anderson, supra; Epps v. Brown*, 9 Vet.App. 341, 343–44 (1996); *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *Anderson, supra; Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993).

 In the instant case, the determinative issue is whether the shell fragments left in the appellant's left arm and chest caused paralysis of the median nerve, poor circulation, and anxiety problems which caused the heart attack and heart disease. The question involves medical etiology or medical evidence of a nexus between an in-service injury and the current disability. *See Caluza, supra.* The appellant's SMRs are devoid of any complaint of or treatment for cardiovascular disease. R. at 21–59. Additionally, the appellant did not complain in any of his

examinations since service of any cardiovascular problems until 1992, after he had suffered the heart attack.

The appellant contends that the symptoms of his heart disease were masked by similar symptomatology associated with the median neuropathy of his left arm, i.e., that the constant pain and numbness in his left arm concealed the circulatory problems which were developing as a result of his heart disease. Appellant's Informal Br. at 3–5. However, no competent evidence has been submitted which associates the appellant's service-connected disabilities with the heart attack he suffered in 1992.

The appellant's wife, a nurse, testified that she felt strongly that

> because of [the appellant's] wounds that the heart condition that he now has was an indirect result from the placement of the foreign bodies in his system and definitely we do feel that the shrapnel where it is lodged especially in his left arm which he is in constant pain from did definitely and perhaps maybe with serious consequences prevent him from seeking help sooner.

R. at 221. In addition, she testified that "[i]t was said to us in passing when my husband was at Miriam Hospital that [there was a] possibility of the correlation between the foreign bodies that he has retained, the decrease of blood flow and the subsequent problems that have resulted." R. at 216. In response to this statement the hearing officer allowed the record to remain open 60 days in order to obtain evidence corroborating a correlation between the retained foreign bodies and his heart problem. R. at 221. No evidence was submitted. The Court does not question the appellant's wife's qualifications as a nurse. However, the appellant's wife, while medically trained, has given no indication that she has special knowledge regarding cardiology nor is there any evidence to that effect in the record. Based on the record and the appellant's statement, the appellant's wife's duties as a registered nurse are administrative in nature and do not relate to cardiology. Furthermore, there is no indication in the record that the appellant's wife ever participated in his treatment. In this case, the record contains medical diagnoses and reports that pertain to the veteran's physical and emotional state since 1946. The record throughout this period does not contain a qualified medical opinion indicating that his injuries and disabilities may have caused his heart problems. In light of the other medical evidence of record, the veteran's wife's opinion regarding the etiology of the appellant's disability is not probative medical evidence. *See Rucker v. Brown*, 10 Vet.App. 67 (1997) (where determinative issue involves either medical etiology or medical diagnosis, competent medical evidence required to fulfill well-grounded claim requirement of 38 U.S.C. § 5107(a)); *see also Grottveit, supra; Espiritu v. Derwinski*, 2 Vet.App. 492 (1992); *cf. Goss v. Brown*, 9 Vet.App. 109, 113 (1996) (treating nurse's statement enough to well ground claim where nurse participated in the treatment of the veteran for symptoms of frostbite).

█ Additionally, the Secretary notes that the BVA determined that the appellant's claim was not well grounded while the RO denied the claim on the merits. This Court has held that a merits analysis by the RO does not prejudice an appellant where the RO does not specifically address whether a claim is well grounded. *Meyer v. Brown*, 9 Vet.App. 425 (1996).

Finally, the Court notes that the appellant has raised several other claims, i.e., claims for service connection for combat anxiety, a deviated septum, and cervical injury, TDIU, and CUE, but has only submitted a Form 1–9 for the issue currently on appeal. R. at 194–95. The appellant is also trying to raise claims for direct service connection for coronary artery disease secondary to smoking which he claims was encouraged during service (*see* R. at 286–88), and disability under 38 U.S.C. § 1151 based on negligent treatment. The Board noted that the appellant has disagreed with the denial of the additional issues, but that these claims had not been developed and certified for appellate review. Therefore, the Court will not address them.

### III. CONCLUSION

Upon consideration of the record, the Secretary's brief, and the appellant's informal

brief, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. The Court is also satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). Therefore, the August 18, 1995, decision of the BVA is AFFIRMED.

KRAMER, Judge, dissenting:

At issue, for determining whether the appellant has submitted a well-grounded claim, is the existence of competent medical evidence etiologically relating the claimant's present condition to a condition incurred in or aggravated by service. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995); *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Here, the appellant, who is service connected for, inter alia, shell fragment wounds of the chest, arms, and right thigh, seeks service connection for heart disease secondary to his service-connected disabilities. The majority holds this claim to be not well grounded. In its opinion, the majority states:

> The Court does not question the appellant's wife's qualifications as a nurse. However, the appellant's wife, while medically trained, has *given no indication that she has special knowledge regarding cardiology* nor is there any evidence to that effect in the record. Based on the record and the appellant's statement, the appellant's wife's duties as a registered nurse are administrative in nature and do not relate to cardiology. Furthermore, there is no indication in the record that the appellant's wife *ever participated in his treatment.* In this case, the record contains medical diagnoses and reports that pertain to the veteran's physical and emotional state since 1946. The record throughout this period does not contain a qualified medical opinion indicating that his injuries and disabilities may have caused his heart problems. *In light of the other medical evidence of record,* the veteran's wife's opinion regarding the etiology of the appellant's disability is not probative medical evidence.

*Ante* at 284 (emphasis added). The three italicized aspects of the above quotation are contrary to the Court's precedent.

First, the Court's precedent clearly treats as competent a medical professional's opinion on medical nexus and other medical questions regardless of whether the professional has "special qualification or expertise" in the precise field. *See Rucker v. Brown,* 10 Vet. App. 67, 74 (1997). For example, in *Goss v. Brown,* 9 Vet.App. 109, 114–15 (1996), the Court found a claim to be well grounded where the only such competent medical evidence was provided by a registered nurse who had known the claimant for 40 years. In this case, the majority inferentially distinguishes *Goss* on the basis of a nurse's speciality and duties; specifically, it noted that this nurse/wife's administrative duties did not involve cardiology, whereas in *Goss,* that nurse had participated in the treatment of the veteran. As to specialization, the Court's caselaw has heretofore only required that a medical opinion be provided by a health-care professional. *YT v. Brown,* 9 Vet.App. 195, 201 (1996); *Goss,* 9 Vet.App. at 115; *Guerrieri v. Brown,* 4 Vet.App. 467, 473 (1993).

Second, as to treatment, the Court has sustained the competency of a medical opinion to make a claim well grounded where the physician merely reviewed records and had not treated the veteran. *See Robinette v. Brown,* 8 Vet.App. 69, 76 (1995) ("It follows from *Flynn*'s holding (that evidence of a physician's oral statement related through another physician's written statement can provide a 'plausible basis' for the Board to rely upon in denying a claim) that such medical-opinion evidence would likewise be sufficient to make a claim 'plausible' or 'possible' and 'capable of substantiation' for purposes of meeting the requirement of a well-grounded claim") (citing *Flynn v. Brown,* 6 Vet.App. 500, 502–03 (1994) (where examining physician relied upon statement by physician with whom he had only "discussed" the case)). The fact that the nurse in *Goss* had participated in treatment does not establish such a requirement for competency when in other cases (*e.g., Robinette* and *Flynn* ) medical professionals who did not provide treatment were found competent to opine on medical

questions for purposes of well grounding a claim. In fact, the Court has explicitly "rejected the broad application of the 'treating physician rule' that gives the opinions of treating physicians greater weight in evaluating veterans' claims." *Van Slack v. Brown,* 5 Vet.App. 499, 502 (1993) (citing *Harder v. Brown,* 5 Vet.App. 183, 188 (1993)); *see Guerrieri, supra.* In addition, medical opinions obtained from the Chief Medical Director of the Veterans Health Administration and independent medical experts provide sufficient bases for awarding a claim, let alone finding one well grounded, and those physicians, by definition, examine only records, not patients. *See* 38 C.F.R. § 20.901(a), (d) (1996).

Additionally, as to both points noted above, the majority's approach would open a virtual Pandora's box of complexity for determining what constitutes medical-nexus evidence under *Grottveit.* As to specialization, how much training or experience is needed? Will specialty certification be required? Will extensive treatment experience or research experience in a field suffice even though the medical professional does not have educational credentials? As to treatment, how many examinations will be required and how extensive will they have to be? Moreover, will the specialization requirement or the treatment requirement be applicable only to nurses, to all non-MDs, or to all health-care professionals?

Finally, the majority appears to be holding, by virtue of the phrase "[i]n light of the other medical evidence of record," *ante* at 284, that weighing of evidence, including a credibility determination with respect to that evidence, is to be made in a preliminary determination of well groundedness. However, the Court has made plain that the Board is not free to judge weight or credibility at the well-groundedness stage except to the extent that it may determine certain evidence to be inherently incredible or beyond the competence of the witness. *See Justus v. Principi,* 3 Vet.App. 510, 513 (1992); *King v. Brown,* 5 Vet.App. 19, 21 (1993); *Layno v. Brown,* 6 Vet.App. 465, 469 (1994). Here, although the familial relationship between the appellant and the provider of evidence might go to the issue of credibility in assessing a matter on the merits, it has no place in a preliminary determination of well groundedness.

I, therefore, respectfully dissent.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, and STEINBERG, Judges.

## ORDER

June 17, 1997

PER CURIAM

On consideration of the request by a judge for en banc review of this matter, it not appearing that review by the full Court is necessary either to address a question of exceptional importance to the administration of laws affecting veterans' benefits or to secure or maintain uniformity of the Court's decisions, it is

ORDERED that the request for en banc review is DENIED.

KRAMER and STEINBERG, Judges, dissenting:

For the reasons set forth in Judge Kramer's dissenting opinion to the panel opinion and because we believe that the panel opinion departs from the Court's established precedent we voted for en banc review. *See* U.S. Vet.App. 35(c) (full Court review to "maintain uniformity of the Court's decisions"). We believe that the case should be remanded for adjudication of the appellant's well-grounded claim.