Citation Nr: 1617294 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 07-19 885 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for post-operative residuals of a left upper lobectomy. 

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). 


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

Jarrette A. Marley, Counsel



INTRODUCTION

The Veteran served on active duty from June 1960 to May 1980. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision by the St. Petersburg, Florida Department of Veterans Affairs (VA) Regional Office (RO). 

In September 2010, the Board remanded these matters for additional development. In an April 2012 decision, the Board denied entitlement to a rating in excess of 30 percent for post-operative residuals of a left upper lobectomy. The Veteran appealed the Board's April 2012 decision to the United States Court of Appeals for Veterans Claims (Court). Pursuant to a May 2013 Joint Motion for Remand (Joint Motion), the Court vacated the Board's decision, and remanded the matter to the Board for further action. In March 2014, the Board remanded the case for additional development. 

The issue of entitlement to a TDIU rating is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Throughout the appeal period, the Veteran's post-operative residuals of a left upper lobectomy has been manifested by complaints of shortness of breath, and pulmonary tests have shown FEV-1 of 40 to 55 percent predicted; pulmonary tests have not shown FEV-1 of less than 40 percent predicted, FEV-1/FVC of less than 40 percent, DLCO (SB) of less than 40 percent predicted, maximum exercise capacity of less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), cor pulmonale, right ventricular hypertrophy, pulmonary hypertension, episodes of acute respiratory failure, or the required use of outpatient oxygen therapy. 

CONCLUSION OF LAW

Throughout the appeal period, the criteria for a 60 percent rating for post-operative residuals of a left upper lobectomy are met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.102, 4.96, 4.97, Diagnostic Code 6844 (2015). 


REASONS AND BASES FOR FINDING AND CONCLUSION

A. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claim. 

In a claim for increase, the VCAA requirement is notice of the type of evidence needed to substantiate the claim, namely, evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The appellant was advised of VA's duties to notify and assist in the development of his claim. A January 2006 letter explained the evidence necessary to substantiate his claim, the evidence VA was responsible for providing, and the evidence he was responsible for providing. While the letter did not provide adequate notice of the laws and regulations governing disability ratings and effective dates as required by the Court in Dingess v. Nicholson, 19 Vet. App. 473, 490 (2006), such lack of notice does not constitute prejudicial error because the record reflects that a reasonable person could be expected to understand what was needed to substantiate the claim after reading the above letter, the statement of the case, the supplemental statement of the case, and the prior Board decision See Shinseki v. Sanders, 556 U.S. 396 (2009). 

VA also has a duty to assist the Veteran in the development of his claim. The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post-service treatment records, and VA examination reports. The Veteran was afforded a VA examinations in March 2006, April 2011, and January 2016. The Board finds that the examinations, cumulatively, are adequate for purposes of deciding his claim for an increased rating for his post-operative left upper lobectomy, decided herein. 

The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide this matter, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159(c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. 

B. Legal Criteria, Factual Background, and Analysis

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Rating Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. 38 C.F.R. § 4.1. 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

Where entitlement to compensation has already been established and increase in disability is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran is currently assigned a 30 percent rating for post-operative residuals of a left upper lobectomy under 38 C.F.R. § 4.97, Code 6844. This Code provides for evaluations pursuant to the General Rating Formula for Restrictive Lung Disease (General Formula). The General Formula provides that a 30 percent rating is assigned when the Forced Expiratory Volume in one second (FEV-1) is 56 to 70 percent predicted, or; FEV-1/Forced Vital Capacity (FVC) is 56 to 70 percent predicted, or; Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)) of 56 to 65 percent predicted. A 60 percent rating is assigned when the FEV-1 is 40 to 55 percent predicted, or; FEV-1/FVC is 40 to 55 percent predicted, or; DLCO (SB) of 40 to 55 predicted, or with maximum oxygen consumption of 15 to 20 ml/kg/min (with cardiorespiratory limit). A maximum 100 percent rating is assigned for FEV-1 less than 40 percent of predicted value; or the ration of FEV-1/FVC is less than 40 percent; or DLCO (SB) less than 40 percent predicted; or maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation); or cor pulmonale (right heart failure); or right ventricular hypertrophy; or pulmonary hypertension (shown by Echo or cardiac catheterization); or episode(s) of acute respiratory failure; or requires outpatient oxygen therapy. 38 C.F.R. § 4.97, Code 6844. 

VA amended the rating schedule concerning respiratory conditions, effective October 6, 2006. VA added provisions that clarify the use of pulmonary function tests (PFTs) in evaluating respiratory conditions. A new paragraph (d) to 38 C.F.R. § 4.96 titled "Special provisions for the application of evaluation criteria for diagnostic codes 6600, 6603, 6604, 6825-6833, and 6840-6845" has seven provisions. PFTs are required to evaluate respiratory conditions except in certain situations. If a DLCO (SB) test is not of record, evaluation should be based on alternative criteria as long as the examiner states why the DLCO (SB) test would not be useful or valid in a particular case. When the PFTs are not consistent with clinical findings, evaluation should generally be based on the PFTs. Post-bronchodilator studies are required when PFTs are done for disability evaluation purposes with some exceptions. When evaluating based on PFTs, post-bronchodilator results are to be used unless they are poorer than the pre-bronchodilator results, then the pre-bronchodilator values should be used for rating purposes. When the results of different PFTs (FEV-1, FVC, etc.) are disparate, the test result that the examiner states most accurately reflects the level of disability should be used for evaluation, and if the FEV-1 and the FVC are both greater than 100 percent, a compensable evaluation based on a decreased FEV-1/FVC ratio should not be assigned. 38 C.F.R. § 4.96. 

Historically, the Veteran underwent a left upper lobectomy in 1965. A September 1980 rating decision granted service connection for left upper lobectomy, rated 30 percent, effective June 1, 1980. The 30 percent rating has been in effect for more than 20 years, and is protected. 38 C.F.R. § 3.951(b). 

In December 2005, the Veteran submitted a claim for increased rating. 

Based on the evidence of record, the Board finds that the Veteran's service-connected post-operative residuals of a left upper lobectomy warrants an increased 60 percent rating throughout the appeal period. In finding that the Veteran is warranted an increased (60 percent) rating throughout the appeal period, the Board notes that the Veteran was previously denied a rating in excess of 30 percent by the Board in April 2012, largely based on a May 2011 VA examiner's opinion that the Veteran's obstruction of the lungs, manifested by FEV-1, were unrelated to the service-connected post-operative residuals of a left upper lobectomy. As noted above, the Veteran appealed the April 2012 Board decision to the Court, and in a May 2013 Joint Motion, it was noted that the Board failed to acknowledge or discuss a July 1980 laboratory report that revealed moderate restrictive defect associated with moderate expiratory obstructive defect. Inasmuch as the evidence shows that the Veteran was separated from service in May 1980, and laboratory testing two months after separation noted and acknowledged both restrictive and obstructive lung defects associated with his left upper lobectomy, and which was also acknowledged in the September 1980 rating decision that awarded service connection, the Board finds the Veteran was awarded service connection for post-operative residuals of a left upper lobectomy which included restrictive and obstructive respiratory defects as such were present during service. See Flynn v. Brown, 6 Vet. App. 500, 503 (1994) (noting that, in the context of service-connected disability compensation, "the element of cause and effect has been totally by-passed in favor of a simple temporal relationship between the incurrence of the disability and the period of active duty"). Hence, there is no need for the Board to separate the restrictive and obstructive respiratory effects, and the opinions doing so no longer have any probative value. 

In September 2005, the Veteran was hospitalized for respiratory distress. The treatment records show that the respiratory distress was due to anaphylactic shock from eating shrimp, to which the Veteran is allergic. Hence, this episode of acute respiratory failure is no benefit to the Veteran as the evidence does not show that it was due to his service-connected post-operative residuals of a left upper lobectomy. 

On March 2006 VA examination, the Veteran complained of shortness of breath (i.e. dyspnea), particularly on exertion, which he reported caused him to quit working. PFTs showed FEV-1 of 49 percent, and a FEV-1/FVC ratio of 61 percent. The examiner noted that there were very inconsistent results due to poor patient effort suggested by inconsistent effort and reduced FEF max. The PFTs did not satisfy American Thoracic Society (ATS) criteria for interpretation. The diagnosis was status-post service-connected lobectomy for unclear reasons. The Veteran had recent shortness of breath, due to unknown etiology. There was no obvious dyspnea on examination, but the examination was conducted in a sedentary situation. 

Private PFTs conducted in October 2006 revealed pre-bronchodilator FEV-1 of 42 percent, and post-bronchodilator FEV-1 of 41 percent. 

Private PFTs conducted in January 2010 showed FEV-1 of 54 percent, and a FEV-1/FVC ratio of 60 percent. 

On April 2011 VA examination, the Veteran reported experiencing shortness of breath in 2002, and that it has gradually worsened. He indicated he experiences dyspnea on exertion of climbing two flights of stairs, but no dyspnea at rest. There was no report of wheezing, easy fatigability, weakness, chest pain, or syncope. PFTs revealed FEV-1 of 52 percent with no significant bronchodialator effect. DLCO (SB) was 67 percent. It was found the Veteran had mild restriction, moderately severe obstruction, and a mild diffusion impairment. There was no objective evidence of cor pulmonale, pulmonary hypertension, right ventricular hypertrophy, or a requirement for outpatient oxygen therapy. 

Private PFTs conducted in July 2013 showed pre-bronchodialator FEV-1 of 49 percent, and post-bronchodialtor FEV-1 of 46 percent. The ratio of FEV-1/FVC pre-bronchodialator was 59 percent, and post-bronchodialator the ratio was 58 percent. It was noted that the findings revealed moderate obstructive lung defect, and mild restrictive lung defect. 

Private PFTs conducted in April 2015 revealed FEV-1 of 44 percent, and a FEV-1/FVC ratio of 52 percent. DLCO (SB) was found to be 74 percent predicted. The findings were noted to consistent with severe obstructive lung defect, and moderate restrictive lung defect. There was a mild decrease in diffusing capacity. 

Private PFTs conducted in December 2015 revealed pre-bronchodialator FEV-1 of 33 percent, and post-bronchodialtor FEV-1 of 46 percent. 

On January 2016 VA examination, it was noted that the Veteran's post-operative residuals of a left upper lobectomy has never required the use of outpatient oxygen therapy. The examination report listed the December 2015 PFTs (although it erroneously transcribed the post-bronchodialator FEV-1 to be 48 percent predicted, as opposed to the finding of 46 percent predicted found on the actual PFTs report). 

Based on a review of the record, the Board concludes that the evidence is consistent with the criteria for an increased (60 percent) rating throughout the appeal period. PFTs have consistently found FEV-1 to be within 40 to 55 percent predicted. Hence, the criteria for an increased rating of 60 percent have been met throughout the appeal period. 

However, the Board finds that the preponderance of the evidence is against a finding that the Veteran's service-connected post-operative residuals of a left upper lobectomy met, or approximated, the criteria for a (maximum) 100 percent rating at any time during the appeal period. During the appeal period, there is no evidence that FEV-1 was less than 40 percent of predicted value, or that the ratio of FEV-1/FVC was less than 40 percent, or DLCO (SB) was less than 40 percent predicted. In addition, there is no evidence, and the Veteran does not contend, of maximum exercise capacity less than 15 ml/kg/min oxygen consumption (with cardiac or respiratory limitation), cor pulmonale, right ventricular hypertrophy, pulmonary hypertension, acute respiratory failure, or outpatient oxygen therapy. As noted above, the episode of acute respiratory failure in September 2005 was due to anaphylactic shock from eating shrimp, to which the Veteran was allergic, and provides no basis for a further increased rating of 100 percent. 

The Board has also considered the Veteran's lay statements regarding the severity of his disability. However, there is no basis to assign a rating higher than the 60 percent awarded in this decision. Disability ratings result from the application of a schedule of ratings which is based on average impairment of earning capacity as determined by the clinical evidence of record. While the Board is sympathetic to the Veteran's claim, the medical findings, which directly address the criteria under which the service-connected disability are considered, are more probative than the Veteran's assessment of the severity of his disability. Therefore, the preponderance of the evidence is against a further increased (and maximum) rating of 100 percent for the Veteran's service-connected post-operative residuals of a left upper lobectomy. 

Finally, in exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

In this case, the medical evidence fails to show anything unique or unusual about the Veteran's service-connected post-operative residuals of a left upper lobectomy. While the disability undoubtedly causes some impairment, as reflected in the Board's decision to award an increased 60 percent rating, no symptoms have been described that would render the schedular criteria inadequate. The Board finds that his service-connected post-operative residuals of a left upper lobectomy does not interfere with employment beyond that contemplated by the currently assigned rating. The Board also notes that the schedular criteria contemplate increased ratings for various respiratory symptomatology, and the regulations regarding respiratory conditions specifically instructs that a single rating will be assigned under the diagnostic code which reflects the predominant disability with elevation to the next higher evaluation where the severity of the overall disability warrants such elevation, which symptomatology and overall impairment has been found, as reflected in the Board's award of an increased 60 percent rating throughout the appeal period. Inasmuch as the General Rating Formula for Restrictive Lung Disease best reflects the Veteran's service-connected post-operative residuals of a left upper lobectomy, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability. 


ORDER

Throughout the appeal period, an increased rating of 60 percent is granted for the Veteran's post-operative residuals of a left upper lobectomy, subject to the regulations governing payment of monetary awards. 




REMAND

While the Board regrets additional delay with respect to the Veteran's claim for TDIU, the Board finds that additional development is necessary prior to adjudication of the claim. 

Based on this decision, the Veteran would meet the schedular criteria for entitlement to a TDIU rating. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). The Veteran is service-connected for post-operative residuals of a left upper lobectomy (rated 60 percent), tendinitis of the right elbow (rated 10 percent), tendinitis of the right shoulder (rated 10 percent), tinnitus (rated 10 percent), and bilateral hearing loss (rated 0 percent). See also 38 C.F.R. § 4.25. 

In his December 2013 VA Form 21-8940, the Veteran indicated he last worked and became too disabled to work in August 2005 as an industrial electrician. His education includes four years of high school. Notably, a March 2014 Social Security Administration (SSA) income earnings statement for the period from 1999 through 2013 shows the Veteran last had income earnings in 2004, and that such was only $15,000.90. In this case, based on the above decision to award an increased 60 percent disability rating for the Veteran's service-connected post-operative residuals of a left upper lobectomy throughout the appeal period, including finding that the disability is manifested and service-connected for restrictive and obstructive respiratory defects, the Board finds that an examination would be useful as to whether his service-connected disabilities render him unable to secure or follow a substantially gainful occupation. 

Accordingly, the case is REMANDED for the following action:

1. Notify the Veteran that he may submit lay statements from himself and other individuals who have first-hand knowledge of the severity of his service-connected disabilities, including their effect on his ability to work. 
Obtain clarification from the Veteran regarding his work history, particularly since and including from 2004, to include a statement as to his current employment status. He should be asked to submit evidence (e.g., pay stubs, W2 Forms, tax returns, letters from employers, etc.) documenting marginal employment, if any, due to his service-connected disabilities since and including from 2004. 

Provide an appropriate amount of time to submit this lay evidence. 

2. Undertake appropriate efforts to determine if the Veteran's annual income since and including from 2004 was below the poverty threshold. 

3. After completing the above and associating any outstanding treatment records with the claims file, schedule the Veteran for an appropriate VA examination regarding his claim for a TDIU rating. The claims file should be made available to and reviewed by the examiner. All appropriate tests should be conducted. 

The examiner should report all pertinent findings and opine as to the Veteran's current level of functioning and impact of his service-connected disabilities on his daily activities and his ability to work, including what specific limitations the Veteran's disabilities would produce and what activities would be impacted. 

In providing this opinion, the reviewing clinician must acknowledge and discuss the Veteran's competent lay report of his symptoms, and concede that the Veteran's service-connected post-operative left upper lobectomy is manifested by both restrictive and obstructive lung defects. 

All findings, along with a fully articulated medical rationale for all opinions expressed, should be set forth in the examination report. 

4. Then readjudicate the appeal (after implementing the award herein). If the benefit sought remains denied, the RO should furnish to the Veteran and his attorney a supplemental statement of the case. An appropriate period of time should be allowed for response. 

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).




______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs