Citation Nr: 1045639 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 06-12 168 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, 
California

THE ISSUES

1. Whether new and material evidence has been received in order 
to reopen a claim of entitlement to service connection for a 
cervical spine disorder, and if so, whether service connection 
may be granted.

2. Whether new and material evidence has been received in order 
to reopen a claim of entitlement to service connection for a 
lumbar spine disorder, and if so, whether service connection may 
be granted.

3. Entitlement to service connection for head injury residuals.

4. Entitlement to service connection for an acquired psychiatric 
disorder, to include posttraumatic stress disorder (PTSD).

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

Patrick J. Costello, Counsel

INTRODUCTION

The appellant served in the Army Air Force from December 1943 to 
April 1946.

This matter comes before the Board of Veterans' Appeals (Board) 
on appeal from rating decisions issued in October 2004 and July 
2006 by the Department of Veterans Affairs (VA) Regional Office 
(RO), in Oakland, California.

In connection with this appeal, the appellant testified at a 
personal hearing before the undersigned Veterans Law Judge 
sitting at the RO in October 2009; a transcript of that hearing 
is associated with the claims file. At the time of the hearing, 
the appellant submitted additional evidence consisting of a 
drawing of the camp where he was stationed in Iceland. A waiver 
of agency of original jurisdiction (AOJ) consideration 
accompanied the submission of such evidence. See 38 C.F.R. 
§ 20.1304 (2009).

With respect to the issue of entitlement to service connection 
for an acquired psychiatric disorder, the Board notes that the RO 
originally adjudicated the issue as entitlement to service 
connection for PTSD. However, medical evidence of record reveals 
additional diagnoses of various acquired psychiatric disorders, 
to include anxiety disorder and depressive disorder. The United 
States Court of Appeals for Veterans Claims (Court) has held that 
the scope of a mental health disability claim includes any mental 
disability that may reasonably be encompassed by the claimant's 
description of the claim, reported symptoms, and the other 
information of record. See Clemons v. Shinseki, 23 Vet. App. 1 
(2009). Therefore, the Board has recharacterized the issue as 
shown on the first page of this decision and acknowledges that 
such description includes a claim of entitlement to service 
connection for all currently diagnosed acquired psychiatric 
disorders.

During the October 2009 Board hearing, the appellant indicated 
that he was in receipt of Social Security Administration (SSA) 
disability benefits, and documentation in the claims file 
confirms this. This documentation shows that his disability 
onset date was 1976. However, as the appellant was born in 1925, 
he is 84 years old. Under 38 U.S.C § 402, his SSA disability 
award was automatically converted to "old age" benefits when he 
turned 65 years old. In light of this, and the fact that the 
Social Security's Document Retention Schedule requires the 
destruction of any disability records when a beneficiary turns 72 
years of age, there is no duty on the part of VA to secure any 
records from that agency.

The claim was subsequently remanded by the Board in January 2010. 
The remand was sent to the RO via the Appeals Management Center 
(AMC), in Washington, DC. The purpose of that remand was to 
provide the appellant additional information concerning the type 
of evidence he needed to submit in order to reopen his previously 
denied claims involving the cervical and lumbar segments of the 
spine. The claim was also remanded so that additional medical 
records could be obtained and included in the claims folder for 
review. The claim has since been returned to the Board for 
further review. 

Upon reviewing the development that has occurred since January 
2010, the Board finds there has been substantial compliance with 
its remand instructions. The Board notes that the Court has 
noted that "only substantial compliance with the terms of the 
Board's engagement letter would be required, not strict 
compliance." D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see 
also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding 
that there was no Stegall violation when the examiner made the 
ultimate determination required by the Board's remand, because 
such determination "more than substantially complied with the 
Board's remand order"). The record indicates that the AMC sent 
a letter to the appellant asking that he provide any additional 
evidence concerning his disabilities of the back and neck, 
including statements by individuals who may witnessed any 
injuries incurred by the appellant. The appellant was also asked 
to provide additional information concerning treatment he had 
received in the 1940s and 1950s, along with the names of the 
institutions that provided him care. Finally, the appellant was 
informed about how he could reopen his claim. Unfortunately, 
additional information was not forthcoming from the appellant 
although the appellant's more recent VA medical treatment records 
were obtained and included in the claims folder for review. The 
AMC then issued a Supplemental Statement of the Case (SSOC) after 
reviewing the results of the information obtained. Based on the 
foregoing, the Board finds that the AMC substantially complied 
with the mandates of the Board's January 2010 remand. See 
Stegall v. West, 11 Vet. App. 268, 271 (1998) (finding that a 
remand by the Board confers on the appellant the right to 
compliance with the remand orders). Therefore, in light of the 
foregoing, the Board will proceed to review and decide the claim 
based on the evidence that is of record consistent with 38 C.F.R. 
§ 3.655 (2010).

Please note this appeal has been advanced on the Board's docket 
pursuant to 38 C.F.R. § 20.900(c) (2010). 38 U.S.C.A. 
§ 7107(a)(2) (West 2002).

FINDINGS OF FACT

1. In a June 1998 rating decision, the RO denied service 
connection for disabilities of the cervical and lumbar segments 
of the spine, and notified the appellant of the determination and 
of his appellate rights, but he did not appeal the determination. 
Hence, that decision became final.

2. The evidence received since the June 1998 rating decision is 
duplicative or cumulative of evidence previously of record and 
does not raise a reasonable possibility of substantiating the 
appellant's lower back and neck disabilities claim. 

3. The appellant's service medical records do not show treatment 
for or complaints involving a head injury.

4. Post-service medical records do not contain any competent 
medical evidence etiologically linking the appellant's purported 
head injury residuals with his military service. 

5. The appellant was not in combat nor did he suffer an assault 
on his persons while he was on active duty. Moreover, he does 
not have a competent diagnosis of PTSD based on a verified 
stressor in service.

6. The service medical treatment records do not show treatment 
for or complaints involving an acquired psychiatric disorder.

7. While the appellant has been diagnosed as suffering from an 
acquired psychiatric disorder, competent medical evidence 
etiologically linking such a mental disorder with the appellant's 
military service has not been proffered. 

CONCLUSIONS OF LAW

1. The June 1998 RO decision denying entitlement to service 
connection for a disability of the cervical segment of the spine 
is final. 38 U.S.C.A. § 7105 (c) (West 1991); 38 C.F.R. §§ 
3.104, 20.302, 20.1103 (1997); currently 38 U.S.C.A. § 7105(c) 
(West 2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2010).

2. The June 1998 RO decision denying entitlement to service 
connection for a disability of the lumbar segment of the spine is 
final. 38 U.S.C.A. § 7105 (c) (West 1991); 38 C.F.R. §§ 3.104, 
20.302, 20.1103 (1997); currently 38 U.S.C.A. § 7105(c) (West 
2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2010).

3. New and material evidence has not been submitted, and the 
claim of entitlement to service connection for a disability of 
the cervical segment of the spine has not been reopened. 38 
U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (a) (2010).

4. New and material evidence has not been submitted, and the 
claim of entitlement to service connection for a disability of 
the lumbar segment of the spine has not been reopened. 38 
U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (a) (2010).

5. Service connection for a head injury and the residuals 
thereof is not warranted. 38 U.S.C.A. §§ 1101, 1110 (West 2002 & 
Supp. 2009); 38 C.F.R. § 3.303 (2010).

6. Service connection for an acquired psychiatric disorder, to 
include PTSD, is not warranted. 38 U.S.C.A. §§ 1101, 1110 (West 
2002 & Supp. 2009); 38 C.F.R. §§ 3.303, 3.304 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the 
appellant's claims file. Although the Board has an obligation to 
provide reasons and bases supporting this decision, there is no 
need to discuss, in detail, the evidence submitted by the 
appellant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 
1380-81 (Fed. Cir. 2000) (the Board must review the entire 
record, but does not have to discuss each piece of evidence). 
The analysis below focuses on the most salient and relevant 
evidence and on what this evidence shows, or fails to show, on 
the claim. The appellant must not assume that the Board has 
overlooked pieces of evidence that are not explicitly discussed 
herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the 
law requires only that the Board address its reasons for 
rejecting evidence favorable to the appellant).

The Board must assess the credibility and weight of all evidence, 
including the medical evidence, to determine its probative value, 
accounting for evidence which it finds to be persuasive or 
unpersuasive, and providing reasons for rejecting any evidence 
favorable to the appellant. Equal weight is not accorded to each 
piece of evidence contained in the record; every item of evidence 
does not have the same probative value. When all the evidence is 
assembled, VA is responsible for determining whether the evidence 
supports the claim or is in relative equipoise, with the 
appellant prevailing in either event, or whether a preponderance 
of the evidence is against a claim, in which case, the claim is 
denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. New and Material Evidence

The appellant has come before the Board asking that his claim for 
service connection for disabilities of the cervical and lumbar 
segments of the spine be reopened and that a decision be issued 
on the merits of the issues.

Concerning the duty to notify the appellant regarding his claim, 
the appellant received the Board's Remand of January 2010, along 
with letters from the AMC and the Supplemental Statement of the 
Case of September 2010, that explained to him the requirement 
that in order to reopen his claim, the VA needed to have received 
new and material evidence. Accordingly, the duty to notify was 
fulfilled in this case. See Kent v. Nicholson, 20 Vet. App. 1 
(2006).

Regarding the duty to assist in claim development, in August 
2001, VA issued regulations to implement the Veterans Claims 
Assistance Act of 2000 (VCAA). See 66 Fed. Reg. 45,620 (Aug. 29, 
2001) (codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159 
and 3.326(a)). The amendments, which apply only to claims 
governed by Part 3 of the Code of Federal Regulations, were 
effective November 9, 2000, except for the amendment to 38 C.F.R. 
§ 3.156(a), which was made effective August 29, 2001. The VCAA 
and the regulations implementing the VCAA provide in some 
circumstances for VA to obtain an additional medical examination 
or opinion. However, special provisions apply to claims to 
reopen finally adjudicated claims filed after November 9, 2000, 
such as this one, allowing such development only if new and 
material evidence is presented or secured, given that the claim 
was previously finally denied. Additionally, the appellant here 
has not averred that there are existing, available records that, 
if received, would be new and material to reopen this claim. 
Accordingly, any duty to assist in claim development has been 
satisfied in this case. See 38 C.F.R. §§ 3.156(a), 3.159(c) 
(2010).

As will be detailed below, the appellant's claims involving 
entitlement to service connection for disabilities of the 
cervical and lumbar segments of the spine have been the subject 
of an adverse prior final decision. As a result, service 
connection for this disorder may now be considered on the merits 
only if new and material evidence has been received since the 
time of the prior adjudication. 38 U.S.C.A. § 5108 (West 2002); 
38 C.F.R. § 3.156 (2010); Manio v. Derwinski, 1 Vet. App. 140, 
145 (1991); Evans v. Brown, 9 Vet. App. 273 (1996).

The Board must consider the question of whether new and material 
evidence has been received because it goes to the Board's 
jurisdiction. See Jackson v. Principi, 265 F.3d 1366 (Fed. Cir. 
2001). If the Board finds that no such evidence has been 
offered, that is where the analysis must end, and what the RO may 
have determined in that regard is irrelevant. See Barnett v. 
Brown, 83 F.3d 1380, 1383 (Fed. Cir. 1996).

For claims to reopen filed on or after August 29, 2001, such as 
this one, evidence is considered "new" if it was not previously 
submitted to agency decision makers. Duty to Assist, 66 Fed. Reg. 
45,620 (Aug. 29, 2001) (Applicability Dates); 38 C.F.R. § 
3.156(a) (2010). "Material" evidence is existing evidence 
that, by itself or when considered with previous evidence of 
record, relates to an unestablished fact necessary to 
substantiate the claim. New and material evidence can be neither 
cumulative nor redundant of the evidence of record at the time of 
the last prior final denial of the claim sought to be reopened, 
and must raise a reasonable possibility of substantiating the 
claim. 38 C.F.R. § 3.156(a) (2009). In determining whether 
evidence is new and material, the "credibility of the evidence 
is to be presumed." Justus v. Principi, 3 Vet. App. 510, 513 
(1992).

The Court has clarified that, with respect to the issue of 
materiality, the newly presented evidence need not be probative 
of all the elements required to award the claim. Evans v. Brown, 
9 Vet. App. 273 (1996). However, it is the specified bases for 
the final disallowance that must be considered, in determining 
whether the newly submitted evidence is probative. Id. Such 
evidence must tend to prove the merits of the claim as to each 
essential element that was a specified basis for that last final 
disallowance of the claim. Id.

The record indicates that the appellant entered onto active duty 
from Toledo, Ohio, in December 1943. He was trained to be a 
rifleman and ultimately became an orderly where he achieved the 
rank of corporal. The service records show that appellant's 
stations of duty included those in Indiana, Texas, and Iceland (a 
colonial possession of the Kingdom of Denmark). He was then 
released from active duty in April 1946. The service medical 
treatment records show that during his period of active duty, the 
appellant received treatment for colds, respiratory infections, 
and syphilis. The same records did not and do not show treatment 
for or complaints involving the lower back or neck. 

After the appellant was released from active duty, he returned to 
Ohio. Then he moved to Texas where it appears he performed 
migrant work of picking cotton. He relocated to California where 
he worked in the California wine vineyards. In August 1980, the 
appellant submitted a claim asking that he be awarded a 
"pension". He did not request service connection for any 
specific disability. Subsequently, a VA nonservice-connected 
pension was awarded in February 1981. 

Approximately seventeen years later, the appellant submitted a 
claim to the VA asking that service connection be granted for 
disabilities of the cervical and lumbar segments of the spine. 
He claimed that while he was on maneuvers at Fort Polk, 
Louisiana, he fell from a bridge into water and suffered an 
injury. He further contended that when he was stationed in 
Iceland, he was going to his barracks and fell into a machine-
gun-nest type of hole, and injured his neck and lower back. 

Following his submission of his claim, the RO reviewed the 
appellant's available medical records and his service records 
(including the medical treatment records). The RO acknowledged 
that the appellant did suffer from limitation of motion of the 
neck and lower back. However, it was also noted by the RO that 
the service medical treatment records were negative for any 
treatment for or complaints involving the lower back or neck. 
Moreover, there was no indication in those same service medical 
treatment records that the appellant ever fell from a bridge or 
fell into a hole while he was on active duty. The RO requested 
that the appellant provide additional information, including the 
names and addresses of individuals who had treated the appellant 
for the claimed disorders. Despite the request, the appellant 
failed to respond. Subsequently, the RO concluded that service 
connection for either disability could not be granted. It was 
determined that since there was no medical evidence suggesting or 
proving that the current disorders were related to or caused by 
or incurred during the appellant's military service, service 
connection could not be granted. 

Hence, a rating action denying the appellant's claim was issued 
in May 1998. The appellant was informed of that decision but he 
did not appeal that action. Hence, that decision became final. 
38 U.S.C.A. § 7105(c) (West 1991); 38 C.F.R. §§ 3.104, 3.385, 
20.302, 20.1103 (1997); currently 38 U.S.C.A. § 7105(c) (West 
2002); 38 C.F.R. §§ 3.104, 20.302, 20.1103 (2010).

When the RO denied service connection, it based its decision on 
the appellant's service medical records, the available post-
service VA medical treatment records, and the appellant's 
application for benefits. Since then, the appellant has 
submitted his own written statements and he has provided 
testimony before the Board. His relevant testimony was 
essentially that he injured his back and neck while in service 
and that after service, he sought treatment from private treating 
physicians since leaving service. He further testified that he 
continued to suffer from conditions affecting the cervical and 
lumbar segments of the spine. The VA has also obtained the 
appellant's available VA medical treatment records and any 
additional records it was made aware thereof. 

Other than as specified above, the additional evidence is new. 
It was not of record prior to May 1998. The additional evidence, 
however, is cumulative. It does not substantiate a previously 
unestablished fact necessary for the appellant to prevail. For 
both the cervical segment of the spine and the lumbar segment of 
the spine, the evidence would need to suggest that the appellant 
was suffering from disabilities that were incurred in or the 
result of the appellant's military service. This evidence could 
be in the form of medical opinion indicating as such or "buddy" 
statements suggesting that the appellant actually injured his 
back and neck while on active duty. See 38 C.F.R. § 3.385 
(2010). Hence, because this type of evidence has not been 
proffered, it is the conclusion of the Board that this evidence 
is not material, because it does not relate to a previously 
unestablished fact necessary to substantiate the claim.

Accordingly, the Board concludes that the appellant has not 
submitted evidence that is new and material, and the denial of 
service connection for disabilities of the lumbar and cervical 
segments of the spine remains final. See generally Manio v. 
Derwinski, supra. The appellant's claim is thus denied. 

II. Service Connection

The other two issues on appeal involve whether the appellant now 
suffers from the residuals of a head injury and a psychiatric 
disorder that as incurred in or was caused by or the result of 
his military service. With respect to the head condition, the 
appellant has averred that sometime while on active duty, he 
injured his head when he fell into the hole in Iceland. 
Concerning the psychiatric disorder, the appellant has asserted 
that he now suffers from a psychiatric disorder, possibly 
classified as PTSD, or some other mental condition that was 
caused by or the result of his military service. He has averred 
that he suffers from nightmares involving his falling into the 
water from the bridge while at Fort Polk or falling into the 
machine-gun-nest hole in Iceland. He maintains that he has long 
experienced depression, anxiety, and other manifestations of a 
mental disorder that he associates with his long-ago military 
service. In both instances the appellant has requested that 
service connection benefits be awarded to him. 

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's 
duty to notify and assist claimants in substantiating a claim for 
VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 
(West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 
3.326(a) (2010).

Upon receipt of a complete or substantially complete application 
for benefits, VA is required to notify the claimant and his or 
her representative, if any, of any information, and any medical 
or lay evidence, that is necessary to substantiate the claim. 38 
U.S.C.A. § 5103(a) (West 2002 & Supp. 2010); 38 C.F.R. § 3.159(b) 
(2010); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper 
VCAA notice must inform the claimant of any information and 
evidence not of record (1) that is necessary to substantiate the 
claim; (2) that VA will seek to provide; and (3) that the 
claimant is expected to provide. See also Dingess/Hartman v. 
Nicholson, 19 Vet. App. 473 (2006). VCAA notice should be 
provided to a claimant before the initial unfavorable agency of 
original jurisdiction (AOJ) decision on a claim. Pelegrini v. 
Principi, 18 Vet. App. 112 (2004); see also Mayfield v. 
Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 
F. 3d 1328 (Fed. Cir. 2006).

VA satisfied its duty to notify by means of letters sent to him 
in March 2004 and April 2006. These letters informed the 
appellant of what evidence was required to substantiate the claim 
for service connection, and of his, and VA's, respective duties 
for obtaining evidence. The appellant was also asked to submit 
evidence and/or information in his possession to the agency of 
jurisdiction (AOJ). These letters were followed by adjudication 
of the claim, and then further readjudication of the claim by way 
of the issuance of two SOCs and a supplemental statement of the 
case (SSOC) of September 2010. 

In March 2006, the Court issued a decision in the consolidated 
appeal of Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), 
which held that the VCAA notice requirements of 38 U.S.C.A. § 
5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a 
service connection claim. Those five elements include: 1) 
appellant status; 2) existence of a disability; (3) a connection 
between the appellant's service and the disability; 4) degree of 
disability; and 5) effective date of the disability. The Court 
held that upon receipt of an application for a service-connection 
claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA 
to review the information and the evidence presented with the 
claim and to provide the claimant with notice of what information 
and evidence not previously provided, if any, will assist in 
substantiating or is necessary to substantiate the elements of 
the claim as reasonably contemplated by the application. 
Additionally, this notice must include notice that a disability 
rating and an effective date for the award of benefits will be 
assigned if service connection is awarded. Id. Although the 
appellant was not specifically provided such notice with respect 
to the issues now on appeal, the error is harmless as the claim 
is herein denied and as no rating and effective date will be 
assigned. 

VA also fulfilled its duty to obtain all relevant evidence with 
respect to the issue on appeal. 38 U.S.C.A. § 5103A (West 2002 & 
Supp. 2010); 38 C.F.R. § 3.159 (2010). The claimant's available 
service treatment records, VA medical treatment records, and 
identified private medical records have been obtained, to the 
extent available. Id. It is noted that the appellant has 
indicated that additional private medical records may have been 
available and supportive of his claim. In response to his 
general assertions, the RO contacted the appellant and asked that 
he provide additional information concerning the names and 
locations of those purported private medical care providers. 
Despite repeated requests for the information, the appellant has 
failed to respond to any of the letters asking for the 
information that could be beneficial the appellant's claim. The 
Board recognizes that it has a duty to assist the appellant in 
obtaining additional information that may benefit or support his 
claim. See Wood v. Derwinski, 1 Vet. App. 190 (1991). However, 
the duty to assist is not a one-way street, and it is the 
conclusion of the Board that the appellant has not fulfilled his 
duty to cooperate in this matter. If an appellant wishes help, 
he cannot passively wait for it in those circumstances where his 
own actions are essential in obtaining the putative evidence. 
Ibid; Hayes v. Brown, 5 Vet. App. 60, 68 (1993). In this 
instance, and given the foregoing, the Board finds that the VA 
has complied with the duty to assist.

The Board also finds that a VA examination is not necessary to 
determine whether the appellant's current psychiatric and 
purported head injury residuals are related to his period of 
honorable service, as the standards of the recent decision of the 
Court in McLendon v. Nicholson, 20 Vet. App. 79 (2006), have not 
been met. Under McLendon, VA must provide a medical examination 
in a service connection claim when there is (1) competent 
evidence of a current disability or persistent or recurrent 
symptoms of a disability, and (2) evidence establishing that an 
event, injury, or disease occurred in service or establishing 
certain diseases manifesting during an applicable presumptive 
period for which the claimant qualifies, and (3) an indication 
that the disability or persistent or recurrent symptoms of a 
disability may be associated with the appellant's service or with 
another service-connected disability, but (4) insufficient 
competent medical evidence on file for the VA to make a decision 
on the claim. Id at 81.

In this case, the service medical records do not show that he was 
treated for a psychiatric disorder or an injury to the head. 
Moreover, there is no competent evidence indicating that the 
purported disorders may be related to his service. In light of 
these findings, the prongs of McLendon have not been met. 
Accordingly, the Board finds that no further action is necessary 
to meet the requirements of the VCAA or the Court.

Under 38 U.S.C.A. §38 U.S.C.A. §§ 1110, 1131 (West 2002) and 38 
C.F.R. § 3.303(b) (2010), service connection may be awarded for a 
"chronic" condition when:

(1) a chronic disease manifests itself and 
is identified as such in service (or within 
the presumption period under 38 C.F.R. § 
3.307) and the veteran presently has the 
same condition; or

(2) a disease manifests itself during 
service (or during the presumptive period), 
but is not identified until later, and 
there is a showing of continuity of related 
symptomatology after discharge, and medical 
evidence relates that symptomatology to the 
veteran's present condition.

Savage v Gober, 10 Vet. App. 488, 495-98 (1997).

To grant service connection, it is required that the evidence 
shows the existence of a current disability, an in-service 
disease or injury, and a link between the disability and the in-
service disease or injury. Watson v. Brown, 4 Vet. App. 309, 314 
(1993). This principle has been repeatedly reaffirmed by the 
United States Court of Appeals for the Federal Circuit, which has 
stated that ". . . a veteran seeking disability benefits must 
establish . . . the existence of a disability [and] a connection 
between the veteran's service and the disability." Boyer v. 
West, 210 F.3d 1351, 1353 (Fed. Cir. 2000).

Moreover, service connection connotes many factors, but 
basically, it means that the facts, as shown by evidence, 
establish that a particular injury or disease resulting in 
disability was incurred coincident with service. A determination 
of service connection requires a finding of the existence of a 
current disability and a determination of a relationship between 
that disability and an injury or disease in service. See Pond v. 
West, 12 Vet. App. 341 (1999); Watson v. Brown, 4 Vet. App. 309, 
314 (1993).

A. Residuals of a Head Injury

As previously noted, the appellant's service medical treatment 
records are negative for any treatment for a head injury. While 
the records show that he was given medications for a cold and 
sore throat, they do not show complaints involving a head injury. 
They do not show that he was treated for an injury that purported 
occurred either at Fort Polk or in Iceland. Moreover, the 
appellant's end-of-service physical is silent for any findings or 
prognostications concerning any head injury or the residuals 
thereof. 

Contained in the multi-volume claims folders are the appellant's 
private and VA medical treatment records. The records for the 
time period immediately following or shortly after the appellant 
left the service do not show any type of treatment for the 
residuals of a head injury. If the Board then goes to the 
records that were obtained in conjunction with the appellant's 
claim for a VA pension, circa 1980, a review of those records is 
also negative for any treatment for or complaints involving some 
type of head injury. It is not until the appellant submitted his 
claim for benefits in 2004, and shortly before, that the 
appellant even raised the specter of suffering from the residuals 
of a head injury that was service-related. 

The Board would further note that the appellant's available 
Social Security Administration (SSA) records and other 
governmental records are negative for any treatment for the 
residuals of a head injury. 

The VA medical treatment records from March 2004 to the present 
are replete with complaints involving a head injury. Some of the 
records show the appellant complaining of headache-like pain or 
throbbing or pain extending from the head to the neck and 
shoulders. While the appellant did receive treatment for the 
complaints involving pain and discomfort, none of those same 
medical records suggest, insinuate, or hypothesize that the pain 
is a residual of a head injury that may have occurred many years 
ago while the appellant was on active duty. 

Unfortunately, the appellant's assertions are the only positive 
evidence in support of his claim. Even if the Board accepts the 
appellant's assertions that he may have suffered from a head 
injury while in service, he has not been diagnosed as suffering 
from the residuals of such an injury. In other words, none of 
the medical evidence suggests that he now has a head injury 
residual that began in or was caused by his military service. 
Alternatively, none of the medical evidence establishes an 
etiological link between the claimed condition with his military 
service.

Notwithstanding the lack of conclusive supporting medical 
evidence, the appellant, along with his accredited 
representative, has continued to assert that the appellant now 
suffers from a disorder that is somehow related to service. With 
regard to specific evidence, the Board must weigh the credibility 
and probative value of the medical opinions, and in so doing, the 
Board may favor one medical opinion over the other. See Evans v. 
West, 12 Vet. App. 22, 30 (1998) (citing Owens v. Brown, 7 Vet. 
App. 429, 433 (1995)); see also Wensch v. Principi, 15 Vet. App. 
362, 368 (2001) (it is not error for the Board to favor the 
opinion of one competent medical expert over that of another when 
the Board gives an adequate statement of reasons and bases for 
doing so). The Board must account for the evidence it finds 
persuasive or unpersuasive, and provide reasons for rejecting 
material evidence favorable to the claim. See Gabrielson v. 
Brown, 7 Vet. App. 36, 39-40 (1994). In determining the weight 
assigned to this evidence, the Board also looks at factors such 
as the health care provider's knowledge and skill in analyzing 
the medical data. See Guerrieri v. Brown, 4 Vet. App. 467, 470-
71 (1993); see also Black v. Brown, 10 Vet. App. 279, 284 (1997).

In this instance, the only opinion provided is that of the 
appellant and endorsed by the accredited representative. Yet, 
merely the claim has been made that the appellant is now 
suffering from a head injury residual that is somehow related to 
the appellant's military service. There has not been a 
discussion of the salient facts nor has there been provided any 
type of rationale that would corroborate any of the appellant's 
conclusions. The Board finds that the generalized statements 
provided by the appellant are too general in nature to provide, 
alone, the necessary evidence to show that the appellant now has 
a diagnosed condition that resulted from his military service 
many years ago. See Sacks v. West, 11 Vet. App. 314, 316-17 
(1998).

The Board would further address the statements made by the 
appellant. The Federal Circuit has held that lay evidence is one 
type of evidence that must be considered and competent lay 
evidence can be sufficient in and of itself. The Board, however, 
retains the discretion to make credibility determinations and 
otherwise weigh the evidence submitted, including lay evidence. 
See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). 
This would include weighing the absence of contemporary medical 
evidence against lay statements.

In Barr v. Nicholson, 21 Vet. App. 303 (2007), the Court 
indicated that varicose veins was a condition involving "veins 
that are unnaturally distended or abnormally swollen and 
tortuous." Such symptomatology, the Court concluded, was 
observable and identifiable by lay people. Because varicose 
veins "may be diagnosed by their unique and readily identifiable 
features, the presence of varicose veins was not a determination 
'medical in nature' and was capable of lay observation." Thus, 
the appellant's lay testimony regarding varicose vein 
symptomatology in service represented competent evidence.

The Federal Circuit, in Jandreau v. Nicholson, 492 F. 3d 1372 
(Fed. Cir. 2007), determined that lay evidence can be competent 
and sufficient to establish a diagnosis of a condition when (1) a 
layperson is competent to identify the medical condition (noting 
that sometimes the layperson will be competent to identify the 
condition where the condition is simple, for example a broken 
leg, and sometimes not, for example, a form of cancer), (2) the 
layperson is reporting a contemporaneous medical diagnosis, or 
(3) lay testimony describing symptoms at the time supports a 
later diagnosis by a medical professional. The relevance of lay 
evidence is not limited to the third situation, but extends to 
the first two as well. Whether lay evidence is competent and 
sufficient in a particular case is a fact issue.

Once evidence is determined to be competent, the Board must 
determine whether such evidence is also credible. See Layno v. 
Brown, 6 Vet. App. 465 (1994), supra (distinguishing between 
competency ("a legal concept determining whether testimony may 
be heard and considered") and credibility ("a factual 
determination going to the probative value of the evidence to be 
made after the evidence has been admitted")). See Barr.

The Board does not doubt the credibility of the appellant in 
reporting his beliefs that he now suffers from the residuals of a 
head injury that were caused by or the result of his military 
service. However, the matter at hand involves complex medical 
assessments that require medical expertise. See Jandreau. The 
appellant is not competent to provide more than simple medical 
observations. He is not competent to provide complex medical 
opinions regarding the etiology of the purported disorder. See 
Barr. Thus, the lay assertions are not competent or sufficient.

In determining whether service connection is warranted, the VA 
must determine whether the evidence supports the claim or is in 
relative equipoise, with the appellant prevailing in either 
event, or whether the preponderance of the evidence is against 
the claim, in which case service connection must be denied. 38 
U.S.C.A. § 5107 (West 2002 & Supp. 2010); Gilbert v. Derwinski, 1 
Vet. App. 49 (1990). In this case, no complaints or symptoms of 
a head injury were noted in service. Nor does competent and 
probative medical evidence relate the appellant's current 
symptoms, first shown many years after service, with the 
appellant's military service or any incident therein. Therefore, 
after reviewing the appellant's claims folder, the Board finds 
that the record is without sufficient competent evidence 
supportive of a finding that the purported disability in question 
became manifest or otherwise originated during his active duty 
service. Moreover, the record does not show the purported 
disorder is etiologically related to his military service, or any 
incident therein. Therefore, it is the conclusion of the Board 
that the preponderance of the evidence is against the appellant's 
claim.

However, even if the Board found that the appellant was competent 
to provide etiological opinions, and that his statements are 
credible, he has not provided any type of rationale for his 
conclusion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 
(2008). Accordingly, his statements are not entitled to any 
probative value. Moreover, the Board finds the lapse in time 
of many decades after discharge from service to the showing of 
the current disorders to be highly probative evidence against the 
appellant's claim. See Maxson v. Gober, 230 F.3d 1330 (Fed. Cir. 
2000) (a significant lapse in time between service and post-
service medical treatment may be considered as part of the 
analysis of a service connection claim). Therefore, as stated 
previously, it is the conclusion of the Board that the 
preponderance of the evidence is against the appellant's claim.

B. Psychiatric Disorder to Include PTSD

With respect to PTSD, eligibility for a PTSD service connection 
award requires that three elements must be present according to 
VA regulations:

(1) medical evidence diagnosing the 
condition in accordance with 38 C.F.R. § 
4.l25(a);

(2) credible supporting evidence that the 
claimed inservice stressor actually 
occurred; and

(3) a link, established by medical 
evidence, between the current symptoms and 
the claimed inservice stressor.

38 C.F.R. § 3.304(f) (2010). See Cohen v. Brown, 10 Vet. App. 
128, 138 (1997). If the evidence establishes that the service 
member engaged in combat with the enemy and the claimed stressor 
is related to that combat, in the absence of clear and convincing 
evidence to the contrary, and provided that the claimed stressor 
is consistent with the circumstances, conditions, or hardships of 
the service member's service, the service member's lay testimony 
alone may establish the occurrence of the claimed in-service 
stressor. See also 38 U.S.C.A. § 1154(b) (West 2002).

If the claimed stressor is related to combat, service department 
evidence that the service member engaged in combat or that the 
service member was awarded the Purple Heart, Combat Infantryman 
Badge, or similar combat citation will be accepted, in the 
absence of evidence to the contrary, as conclusive evidence of 
the claimed inservice stressor. 38 C.F.R. § 3.304(t) (2010).

In the case of Cohen, supra, 10 Vet. App. 128 (1997), the United 
States Court of Veterans Appeals, hereinafter the Court, took 
judicial notice of the mental health profession's adoption of the 
DSM-IV in May 1994 (first printing) and its more liberalizing 
standards to establish a diagnosis of PTSD, specifically, a 
change from an objective "would evoke. . . in almost anyone" 
standard in assessing whether a stressor is sufficient to trigger 
PTSD, to a subjective standard - would a person's exposure to a 
traumatic event and response involving intense fear, 
helplessness, or horror. Hence, the Court noted that a more 
susceptible person could have PTSD under the DSM-IV criteria 
given his or her exposure to a traumatic event that would not 
necessarily have the same effect on "almost everyone." Cohen, 
10 Vet. App. 128, 140- 41 (1997). .

For the purposes of establishing service connection, a stressor 
is an event experienced by the service member during active 
service that is outside the range of normal human experience and 
that would be markedly disturbing to almost anyone. Examples of 
such events are experiencing an immediate threat to one's life, 
or witnessing another person being seriously injured or killed. 
It is the distressing event, rather than the mere presence in a 
"combat zone" that may constitute a valid stressor for the 
purposes of supporting a diagnosis of PTSD. See Zarycki v. 
Brown, 6 Vet. App. 91, 99 (1993); Wood v. Derwinski, 1 Vet. App. 
190, 193 (1991).

Relative to PTSD, if the evidence shows that the service member 
was engaged in combat with the enemy and the claimed stressor was 
related to combat, no further development for evidence of a 
stressor is necessary. If the claimed stressor is not related to 
combat with the enemy, a history of a stressor as related by the 
service member is, in itself, insufficient. Service records must 
support the assertion that the service member was subjected to a 
stressor of sufficient gravity to evoke the symptoms in almost 
anyone. Thus, the existence of a recognizable stressor or 
accumulation of stressors must be supported. It is important 
that the stressor be described as to its nature, severity, and 
date of occurrence. Manual M21-1, Part VI, para. 7 .46(e),(f) 
(Dec. 21, 1992).

Additionally, with regard to the second criterion, the evidence 
necessary to establish that the claimed stressor actually 
occurred varies depending on whether the service member "engaged 
in combat with the enemy." 38 U.S.C.A. § 1154(b) (West 2002). 
"Where it is determined, through recognized military citations 
or other supportive evidence, that the appellant was engaged in 
combat with the enemy and the claimed stressors are related to 
such combat, the appellant's lay testimony regarding claimed 
stressors must be accepted as conclusive as to their actual 
occurrence and no further development for corroborative evidence 
will be required, provided that the appellant's testimony is 
found to be 'satisfactory,' e.g., credible, and 'consistent with 
the circumstances, conditions, or hardships of [combat] 
service.'" Zarycki, supra; 38 U.S.C.A. § 1154(b) (West 2002); 
38 C.F.R. § 3.304(d), (f) (2010).

VA General Counsel has held that "[t]he ordinary meaning of the 
phrase 'engaged in combat with the enemy,' as used in 38 U.S.C.A. 
§ 1154(b), requires that a veteran have participated in events 
constituting an actual fight or encounter with a military foe or 
hostile unit or instrumentality." The determination whether 
evidence establishes that a veteran engaged in combat with the 
enemy is resolved on a case-by-case basis with evaluation of all 
pertinent evidence and assessment of the credibility, probative 
value, and relative weight of the evidence. VAOGCPREC 12-99; 65 
Fed. Reg. 6,256-58 (Feb. 8, 2000). 

Effective July 13, 2010, VA amended 38 C.F.R. § 3.304(f) by 
liberalizing, in certain circumstances, the evidentiary standards 
for establishing the occurrence of an in-service stressor for 
non-combat veterans. See 75 Fed. Reg. 39,843-39,852 (effective 
July 13, 2010). Previously, VA was required to undertake 
extensive development to determine whether a non-combat veteran 
actually experienced the claimed in-service stressor and lay 
testimony, by itself, was not sufficient to establish the 
occurrence of the alleged stressor. Dizoglio v. Brown, 9 Vet. 
App. 163, 166 (1996). Instead, credible supporting evidence of a 
corroborated in-service stressor was required. Credible 
supporting evidence was not limited to service department 
records, but could be from any source. See YR v. West, 11 Vet. 
App. 393, 397 (1998); see also Moreau v. Brown, 9 Vet. App. 389, 
395 (1996). Further, credible supporting evidence of the actual 
occurrence of an in-service stressor could not consist solely of 
after-the-fact medical nexus evidence. See Moreau, 9 Vet. App. 
at 396. 

The amended version of 38 C.F.R. § 3.304(f)(3) eliminated the 
need for stressor corroboration in circumstances in which the 
veteran's claimed in-service stressor is related to "fear of 
hostile military or terrorist activity." Specifically, the 
amended version of 38 C.F.R. § 3.304(f)(3) states:

If a stressor claimed by a veteran is 
related to the veteran's fear of hostile 
military or terrorist activity and a VA 
psychiatrist or psychologist, or a 
psychiatrist or psychologist with whom VA 
has contracted, confirms that the claimed 
stressor is adequate to support a 
diagnosis of [PTSD] and the veteran's 
symptoms are related to the claimed 
stressor, in the absence of clear and 
convincing evidence to the contrary, and 
provided the claimed stressor is 
consistent with the places, types, and 
circumstances of the veteran's service, 
the veteran's lay testimony alone may 
establish the occurrence of the claimed 
in-service stressor. 

For purposes of this paragraph, "fear of 
hostile military or terrorist activity" 
means that a veteran experienced, 
witnessed, or was confronted with an event 
or circumstance that involved actual or 
threatened death or serious injury, or a 
threat to the physical integrity of the 
veteran or others, such as from an actual 
or potential improvised explosive device; 
vehicle-imbedded explosive device; 
incoming artillery, rocket, or mortar 
fire; grenade; small arms fire, including 
suspected sniper fire; or attack upon 
friendly military aircraft, and the 
veteran's response to the event or 
circumstance involved a psychological or 
psycho-physiological state of fear, 
helplessness, or horror. 

See 38 C.F.R. § 3.304(f)(3) (codified in 75 Fed. Reg. 39,843-
39,852). The VA General Counsel has held that where a law or 
regulation changes during the pendency of a claim for increased 
rating, the Board should first determine whether application of 
the revised version would produce retroactive results. In 
particular, a new rule may not extinguish any rights or benefits 
the veteran had prior to enactment of the new rule. See 
VAOPGCPREC 7-2003 (Nov. 19, 2003). However, if the revised 
version of the regulation is more favorable, the implementation 
of that regulation under 38 U.S.C.A. § 5110(g), can be no earlier 
than the effective date of that change. VA can apply only the 
earlier version of the regulation for the period prior to the 
effective date of the change. The amended version of 38 C.F.R. 
§ 3.304(f) is not applicable to the claim now before the Board. 

Additionally, in Patton v. West, 12 Vet. App. 272, 278 (1999), 
the Court pointed out that there are special evidentiary 
procedures for PTSD claims based on personal assault contained in 
VA ADJUDICATION MANUAL M21-1, Part III, para. 5.14c (February 20, 
1996), and former M21-1, Part III, para. 7.46(c)(2) (October 11, 
1995). In personal assault cases, more particularized 
requirements are established regarding the development of 
"alternative sources" of information as service records "may 
be devoid of evidence because many victims of personal assault, 
especially sexual assault and domestic violence, do not file 
official reports either with military or civilian authorities." 
VA ADJUDICATION PROCEDURAL MANUAL M21-1, Part III, para. 
5.14c(5).

With respect to personal assaults, 38 C.F.R. § 3.304(f) was 
amended in March 2002, to add the following: If a PTSD claim is 
based on in-service personal assault, evidence from sources other 
than the appellant's service records may corroborate the 
appellant's account of the stressor incident. Examples of such 
evidence include, but are not limited to: records from law 
enforcement authorities, rape crisis centers, mental health 
counseling centers, hospitals, or physicians; pregnancy tests or 
tests for sexually transmitted diseases; and statements from 
family members, roommates, fellow service members, or clergy. 
Evidence of behavior changes following the claimed assault is one 
type of relevant evidence that may be found in these sources. 
Examples of behavior changes that may constitute credible 
evidence of the stressor include, but are not limited to: a 
request for a transfer to another military duty assignment; 
deterioration in work performance; substance abuse; episodes of 
depression, panic attacks, or anxiety without an identifiable 
cause; or unexplained economic or social behavior changes. VA 
will not deny a PTSD claim that is based on in-service personal 
assault without first advising the claimant that evidence from 
sources other than the appellant's service records or evidence of 
behavior changes may constitute credible supporting evidence of 
the stressor and allowing him or her the opportunity to furnish 
this type of evidence or advise VA of potential sources of such 
evidence. VA may submit any evidence that it receives to an 
appropriate medical or mental health professional for an opinion 
as to whether it indicates that a personal assault occurred. 38 
C.F.R. § 3.304(f)(3) (2010).

As previously indicated, the appellant had service in the 
continental United States and in Iceland during and immediately 
following World War II. He was not in combat and he did not fire 
his weapon against the enemy during the war. Instead, the 
appellant trained to as a basic rifleman and when he was shipped 
to the European Theatre of Operations, he was an orderly in 
Iceland. The appellant's service records show that the appellant 
was given a valour award. 

Instead, the appellant claims that he now suffers from a 
psychiatric disorder that was caused by or related to his 
military service. He has alternatively classified the condition 
as PTSD and says that he suffers from repeated nightmares and 
intrusive thoughts of his time while on active duty. He has not 
said that he was exposed to enemy fire or dead bodies. He has 
not contended that he experienced an assault on his persons while 
he was performing his military duties. 

Yet, despite the appellant's assertions, he has not provided any 
documents or statements from members of his Army unit that could 
verify his claimed stressors. He did not provide names of 
individuals who might have witnessed the purported fall from the 
bridge into the water where he almost drowned or the fall into 
the machine-gun-nest hole where he remained for many hours. 
There is no military record or chaplain's statement that would 
indicate an investigation occurred as a result of the appellant's 
fall or falls or that the claimed events even occurred. There is 
just a lack of evidence, including letters to family or friends, 
which would corroborate the appellant's assertions.

To make sure that the appellant fully understands what the Board 
is saying - none of the incidents claimed by the appellant could 
be verified. With respect to either incident he asserts was 
stressful, the appellant has remained vague with regard to such 
pertinent facts as names, dates, and locations. He has never 
commented on whether any verifiable person was with him at the 
time any of the "stressful" events occurred, the date it 
happened, or other information that would help in the 
confirmation of his stories. Moreover, the file contains no 
other independent credible evidence, such as statements from 
fellow soldiers, as to the occurrence of the alleged events.

The Board recognizes that it has a duty to assist the veteran in 
obtaining additional information that may benefit or support his 
claim. See Wood v. Derwinski, 1 Vet. App. 190 (1991). The 
claims folder indicates that, on numerous occasions, the VA has 
attempted to obtain additional information from the appellant 
concerning his claimed stressors. However, the veteran has 
remained vague in providing the needed information. To the 
Board, it appears that the appellant has not provided information 
that is essential in obtaining the verifying evidence he eludes 
thereto. See also Gobber v. Derwinski, 2 Vet. App. 470 (1992); 
Olson v. Principi, 3 Vet. App. 480 (1992).

The appellant may assert that because an examiner has provided a 
diagnosis of PTSD, this should be enough to prevail on his claim. 
It is true that the appellant does have a diagnosis of PTSD and 
he has received treatment for other psychiatric disorders. 
However, the diagnosis of PTSD was apparently made following a 
recitation by the appellant of his alleged stressors, which may 
or may not have resulted from actions while in the Army. Of 
interest to the Board are the other medical reports that indicate 
that the appellant has suffered from a number of other 
psychiatric conditions that began many years after service and 
were not related to his years on active duty. 

Because the PTSD diagnosis has been based on the appellant's own 
recitation of his alleged service history (stressors), it is 
uncertain to what extent the appellant actually meets the 
criteria for PTSD. Where the VA determines that the appellant 
did not engage in combat with the enemy, or that the appellant 
did engage in combat with the enemy but the claimed stressor is 
not related to such combat, the appellant's lay testimony, by 
itself, will not be enough to establish the occurrence of the 
alleged stressor. Zarycki, supra.

The Court held in West, supra, in effect, that a psychiatric 
evaluation that is based on an incomplete or questionable history 
is inadequate for rating purposes and frustrates the efforts of 
judicial review. Reviewing Zarycki and West together, it appears 
that in approaching a claim for service connection for PTSD, the 
question of the existence of an event claimed as a recognizable 
stressor must be resolved by adjudicatory personnel and, once 
such a stressor is established, whether it is sufficient to give 
rise to PTSD is a medical determination. Thus, if an examiner 
renders a diagnosis of PTSD that is not clearly based upon 
stressors in service whose existence the adjudicators have 
accepted, the examination would be inadequate for rating 
purposes. Because the Board can find no verifiable stressor, it 
would be pointless to conduct "ancillary testing" to further 
corroborate his diagnostic condition. The Board further 
concludes that any attempts to corroborate claimed stressors 
through other government agencies would also be fruitless.

The Board is cognizant of the case of Pentecost v. Principi, 16 
Vet. App. 124 (2002), and the change in 38 C.F.R. 3.304(f). In 
Pentecost, the Court reversed the Board's denial of a claim for 
service connection for PTSD on the basis of an unconfirmed in-
service stressor. However, in Pentecost, supra, the claimant 
submitted evidence that his unit was subjected to rocket attacks. 
The Court pointed out that corroboration of every detail of a 
stressor under such circumstances, such as the claimant's own 
personal involvement, is not necessary. See, also, Suozzi v. 
Brown, 10 Vet. App. 307 (1997). The facts in this case are 
distinguishable because the appellant has submitted no 
independent evidence of the occurrence of the claimed in-service 
stressors. Indeed, as noted above, VA has been unable to confirm 
his allegations.

In determining whether service connection is warranted, the Board 
must determine whether the evidence supports the claim or is in 
relative equipoise, with the appellant prevailing in either 
event. If, however, the preponderance of the evidence is against 
the claim, service connection must be denied. 38 U.S.C.A. § 5107 
(West 2002 & Supp. 2010); Gilbert v. Derwinski, 1 Vet. App. 49 
(1990). In this case, a verifiable stressor to support a 
diagnosis of PTSD has not been shown. While PTSD has been 
diagnosed, the appellant has not provided sufficiently detailed 
information relating to his examples of stressors to allow for 
corroboration, and, a diagnosis of PTSD, without verified 
stressors relating the disorder to military service, is 
insufficient to establish entitlement to service connection. The 
Board finds therefore that there is not sufficient evidence to 
place the evidence in equipoise as to whether the appellant 
suffers from PTSD related to his military service. On the basis 
of these findings and following a full review of the record, the 
Board concludes that the record does not show that the appellant 
has PTSD related to his experiences while in the US Army, and 
service connection for PTSD is not warranted.

With respect to the alternative contention by the appellant that 
he now suffers from an acquired psychiatric disorder, not to 
include PTSD, and that such a condition began in or was caused by 
or the result of his military service. A review of the service 
medical treatment records reveals that while on active duty, the 
appellant did not receive any type of treatment for a mental 
disorder or disability. Additionally, the post-service medical 
records do not contain an opinion or assertion or even a 
supposition that the appellant now suffers from a psychiatric 
disorder that was caused by or the result of or began while he 
was on active duty. 

Notwithstanding the lack of conclusive supporting medical 
evidence, the appellant, along with his accredited 
representative, has continued to assert that the appellant now 
suffers from a psychiatric disorder that is somehow related to 
service. With regard to specific evidence, the Board must weigh 
the credibility and probative value of the medical opinions, and 
in so doing, the Board may favor one medical opinion over the 
other. See Evans v. West, 12 Vet. App. 22, 30 (1998) (citing 
Owens v. Brown, 7 Vet. App. 429, 433 (1995)); see also Wensch v. 
Principi, 15 Vet. App. 362, 368 (2001) (it is not error for the 
Board to favor the opinion of one competent medical expert over 
that of another when the Board gives an adequate statement of 
reasons and bases for doing so). The Board must account for the 
evidence it finds persuasive or unpersuasive, and provide reasons 
for rejecting material evidence favorable to the claim. See 
Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994). In 
determining the weight assigned to this evidence, the Board also 
looks at factors such as the health care provider's knowledge and 
skill in analyzing the medical data. See Guerrieri v. Brown, 4 
Vet. App. 467, 470-71 (1993); see also Black v. Brown, 10 Vet. 
App. 279, 284 (1997).

In this instance, the only opinion provided is that of the 
appellant and endorsed by the accredited representative. Yet, 
merely the claim has been made that the appellant now suffers 
from a psychiatric disorder or disability that is somehow related 
to the appellant's military service. There has not been a 
discussion of the salient facts nor has there been provided any 
type of rationale that would corroborate any of the appellant's 
conclusions. The Board finds that the generalized statements 
provided by the appellant are too general in nature to provide, 
alone, the necessary evidence to show that the appellant now has 
a diagnosed condition that resulted from his military service 
many years ago. See Sacks v. West, 11 Vet. App. 314, 316-17 
(1998).

The Board would further address the statements made by the 
appellant. The Federal Circuit has held that lay evidence is one 
type of evidence that must be considered and competent lay 
evidence can be sufficient in and of itself. The Board, however, 
retains the discretion to make credibility determinations and 
otherwise weigh the evidence submitted, including lay evidence. 
See Buchanan v. Nicholson, 451 F.3d 1331, 1335 (Fed. Cir. 2006). 
T his would include weighing the absence of contemporary medical 
evidence against lay statements.

In Barr v. Nicholson, 21 Vet. App. 303 (2007), the Court 
indicated that varicose veins was a condition involving "veins 
that are unnaturally distended or abnormally swollen and 
tortuous." Such symptomatology, the Court concluded, was 
observable and identifiable by lay people. Because varicose 
veins "may be diagnosed by their unique and readily identifiable 
features, the presence of varicose veins was not a determination 
'medical in nature' and was capable of lay observation." Thus, 
the appellant's lay testimony regarding varicose vein 
symptomatology in service represented competent evidence.

The Federal Circuit, in Jandreau v. Nicholson, 492 F. 3d 1372 
(Fed. Cir. 2007), determined that lay evidence can be competent 
and sufficient to establish a diagnosis of a condition when (1) a 
layperson is competent to identify the medical condition (noting 
that sometimes the layperson will be competent to identify the 
condition where the condition is simple, for example a broken 
leg, and sometimes not, for example, a form of cancer), (2) the 
layperson is reporting a contemporaneous medical diagnosis, or 
(3) lay testimony describing symptoms at the time supports a 
later diagnosis by a medical professional. The relevance of lay 
evidence is not limited to the third situation, but extends to 
the first two as well. Whether lay evidence is competent and 
sufficient in a particular case is a fact issue.

Once evidence is determined to be competent, the Board must 
determine whether such evidence is also credible. See Layno v. 
Brown, 6 Vet. App. 465 (1994), supra (distinguishing between 
competency ("a legal concept determining whether testimony may 
be heard and considered") and credibility ("a factual 
determination going to the probative value of the evidence to be 
made after the evidence has been admitted")). See Barr.

The Board does not doubt the credibility of the appellant in 
reporting his beliefs that he now suffers from a psychiatric 
disability that was caused by or the result of his military 
service. However, the matter at hand involves complex medical 
assessments that require medical expertise. See Jandreau. The 
appellant is not competent to provide more than simple medical 
observations. He is not competent to provide complex medical 
opinions regarding the etiology of the claimed disorder. See 
Barr. Thus, the lay assertions are not competent or sufficient.

In determining whether service connection is warranted, the VA 
must determine whether the evidence supports the claim or is in 
relative equipoise, with the appellant prevailing in either 
event, or whether the preponderance of the evidence is against 
the claim, in which case service connection must be denied. 38 
U.S.C.A. § 5107 (West 2002 & Supp. 2010); Gilbert v. Derwinski, 1 
Vet. App. 49 (1990). In this case, no complaints or symptoms of 
a psychiatric disorder were noted in service. Nor does competent 
and probative medical evidence relate any current psychiatric 
disorder, first shown many years after service, with the 
appellant's military service or any incident therein. Therefore, 
after reviewing the appellant's claims folder, the Board finds 
that the record is without sufficient competent evidence 
supportive of a finding that the purported disability in question 
became manifest or otherwise originated during his active duty 
service. Moreover, the record does not show the purported 
disorder is etiologically related to his military service, or any 
incident therein. 

 (CONTINUED ON NEXT PAGE)

Therefore, it is the conclusion of the Board that the 
preponderance of the evidence is against the appellant's claim.

ORDER

New and material evidence has not been received sufficient to 
reopen the appellant's claim for entitlement to service 
connection for a disability of the cervical segment of the spine, 
and as such, the claim is denied.

New and material evidence has not been received sufficient to 
reopen the appellant's claim for entitlement to service 
connection for a disability of the lumbar segment of the spine, 
and as such, the claim is denied.

Entitlement to service connection for the residuals of a head 
injury is denied. 

Entitlement to service connection for an acquired psychiatric 
disorder, to include PTSD, is denied.

____________________________________________
C. TRUEBA
Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs